**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| |
|---|
| KERRY ANN LOOMIS, individually and on behalf of others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>UNUM GROUP CORPORATION,<br><br>                   Defendant. |

Case No. 1:20-cv-00251

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR STEP-ONE NOTICE**
**PURSUANT TO THE FAIR LABOR STANDARDS ACT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

    I.    BENEFITS SPECIALISTS WORK IN FOUR DIFFERENT PRODUCT AREAS
MANAGING DIFFERENT TYPES OF CLAIMS. ................................................... 4

        A.   Short-Term Disability .................................................................................. 4

        B.   Long-Term Care ........................................................................................... 5

        C.   Long-Term Disability & Individual Disability Insurance ............................. 7

    II.   IN EACH DISABILITY PRODUCT AREA, BENEFITS SPECIALIST DUTIES AND
RESPONSIBILITIES VARY BY TITLE. .............................................................. 8

        A.   Core Benefits Specialists ............................................................................. 9

        B.   Senior Benefits Specialists .......................................................................... 9

        C.   Lead Benefits Specialists ........................................................................... 10

    III.   PLAINTIFF WAS NOT SIMILARLY SITUATED TO OTHER BENEFITS
SPECIALISTS AT UNUM ................................................................................... 10

ARGUMENT ............................................................................................................. 11

    I.    THE STANDARD FOR CONDITIONAL CERTIFICATION. ..................................... 12

    II.   PLAINTIFF CANNOT MEET THE STANDARD FOR CONDITIONAL
CERTIFICATION BY RELYING ON THE LEGALLY MERITLESS ARGUMENT THAT
ALL BENEFITS SPECIALISTS ARE PER SE NON-EXEMPT REGARDLESS OF THE
DISCRETION AND JUDGMENT THEY USE IN ADJUSTING CLAIMS. ........................ 14

        A.   Unum's Benefits Specialists Are Claims Adjusters Whose Work Falls Within the
Scope of the Administrative Exemption, Whether the Claims Adjustment Services Are
Provided on Behalf of Unum or its Customers. .................................................... 14

        B.   Plaintiff Cannot Rely on a Meritless Legal Theory to Justify Conditional Certification
and Nationwide Notice to Potential Opt-Ins. ....................................................... 17

    III.   PLAINTIFF IS NOT SIMILARLY SITUATED TO THE EMPLOYEES SHE SEEKS
TO REPRESENT ................................................................................................ 19

        A.   Plaintiff Is Not Similarly Situated to Benefits Specialists Working in Other Unum
Disability Product Areas. ................................................................................... 19

        B.   Plaintiff Is Not Similarly Situated to Benefits Specialists at Other Levels Within the
STD Product Area. ............................................................................................ 20

        C.   Plaintiff Is Not Similarly Situated to Other Core Benefits Specialists in Her Product
Area. ................................................................................................................ 22

    IV.   THE COURT SHOULD NOT ADOPT PLAINTIFF'S PROPOSED NOTICE OR
NOTICE PROGRAM. .......................................................................................... 23

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008).................................................................17

*Anderson v. Minacs Grp. (USA) Inc.*,
    No. 16-13942, 2017 WL 1856276 (E.D. Mich. May 9, 2017) ..............................24

*Bauer v. Transtar Industries*,
    No. 1:15 CV 2602, 2016 WL 1408830 (N.D. Ohio Apr. 11, 2016) .......................13

*Bothell v. Phase Metrics, Inc.*,
    299 F.3d 1120 (9th Cir. 2002) ...............................................................................16

*Cardoso v. Pick A Part LLC*,
    No. CV-18-04759-PHX-SPL, 2019 WL 3973128 (D. Ariz. Aug. 22, 2019) .........18

*Christopher v. SmithKline Beecham Corp.*,
    No. CV-08-1498-PHX-FJM, 2009 WL 4051075 (D. Ariz. Nov. 20, 2009),
    *aff'd*, 635 F.3d 383 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012).............................18

*Clark v. Centene Co. of Tex., L.P.*,
    44 F. Supp. 3d 674 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016)....16

*Comer v. Wal-Mart Stores*,
    454 F.3d 544 (6th Cir. 2006) ...................................................................12, 14, 19

*Cowan v. Nationwide Mut. Ins. Co.*,
    No. 2:19-cv-1225, 2019 WL 4667497 (S.D. Ohio Sep. 25, 2019) .........................24

*Davis v. Colonial Freight Sys., Inc.*,
    No. 3:16-CV-674-TRM-HBG, 2018 WL 2014548 (E.D. Tenn. Apr. 30, 2018)..............24, 25

*Duncan-Watts v. Nestle USA*,
    No. 1:19 CV 01437, 2020 WL 589041 (N.D. Ohio Feb. 5, 2020) .............12, 14, 19

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018)............................................................................................16

*Fenley v. Wood Grp. Mustang, Inc.*,
    170 F. Supp. 3d 1063 (S.D. Ohio 2016) ...........................................................23, 25

*Foster v. Nationwide Mut. Ins. Co.*,
    710 F.3d 640 (6th Cir. 2013) ...................................................................15, 16, 17

*Frye v. Baptist Mem'l Hosp.*,
    No. 07-2708, 2008 WL 6653632 (W.D. Tenn. Sept. 16, 2008) .............................12

*Gusdonovich v. Bus. Info. Co.*,
　705 F. Supp. 262 (W.D. Pa. 1985) ........................................................................16

*Hamm v. S. Ohio Med. Ctr.*,
　275 F. Supp. 3d 863 (S.D. Ohio 2017) ................................................................18

*Heaps v. Safelite Sols., LLC*,
　No. 2:10 CV 729, 2011 WL 1325207 (S.D. Ohio Apr. 5, 2011) ...........................23

*Hoffman-La Roche v. Sperling*,
　493 U.S. 165 (1989) .............................................................................................12

*Hughes v. Gulf Interstate Field Servs.*,
　No. 2:14–cv–000432, 2015 WL 4112312 (S.D. Ohio July 7, 2015) .....................13

*Jastremski v. Safeco Ins. Cos.*,
　243 F. Supp. 2d 743 (N.D. Ohio 2003) ................................................................15

*Knispel v. Chrysler Grp. LLC*,
　No. 11-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) ..............................23

*Larson v. Rush Fitness Corp.*,
　No. 3:12-CV-109, 2013 WL 5350640 (E.D. Tenn. Sept. 23, 2013) ......................12

*Lewis v. Huntington Nat'l Bank*,
　789 F. Supp. 2d 863 (S.D. Ohio 2011) ................................................................13

*Loomis v. CUSA, LLC*,
　257 F.R.D. 674 (D. Minn. 2009) ..........................................................................18

*McClain v. First Acceptance Corp.*,
　No. 3:17-cv-00408, 2017 WL 3268026 (M.D. Tenn. Aug. 1, 2017) .....................24

*McKeen-Chaplin v. Provident Sav. Bank, FSB*,
　862 F.3d 847 (9th Cir. 2017) ...............................................................................16

*Melton v. Lawrence*,
　No. 1:18-cv-167-SKL, 2018 WL 5723942 (E.D. Tenn. Oct. 31, 2018) ..........24, 25

*Murray v. Ohio Cas. Corp.*,
　No. 2:04-CV-539, 2005 WL 2373857 (S.D. Ohio Sept. 27, 2005) ......................15

*O'Brien v. Ed Donnelly Enters.*,
　575 F.3d 567 (6th Cir. 2009) ...........................................................................12, 19

*O'Neal v. Kilbourne Med. Labs.*,
　No. Civil Action No. 05-50, 2007 WL 956428 (E.D. Ky. Mar. 28, 2007) ........17, 18

*Olivo v. GMAC Mortg. Corp.*,
    374 F. Supp. 2d 545 (E.D. Mich. 2004)...........................................................17

*Pierce v. Wyndham Vacation Resorts, Inc.*,
    No. 3:13-CV-641-PLR-CCS, 2015 WL 574501 (E.D. Tenn. Feb. 11, 2015) ........................23

*Rego v. Liberty Mut. Managed Care*,
    367 F. Supp. 3d 849 (E.D. Wis. 2019)...........................................................16

*Reich v. Am. Int'l. Adjustment Co.*,
    902 F. Supp. 321 (D. Conn. 1994)...............................................................16

*Roe-Midgett v. CC Servs.*,
    512 F.3d 865 (7th Cir. 2008) ..................................................................17

*Saddler v. Memphis City Schs*,
    No. 12-CV-2232-JTF-tmp, 2013 WL 12100720 (W.D. Tenn. Feb. 4, 2013),
    *report and recommendation adopted by* 2013 WL 12100721 (W.D. Tenn.
    Mar. 27, 2013)................................................................................13

*Scott Wetzel Services v. N.Y. Board of Industrial Appeals*,
    682 N.Y.S.2d 304 (App. Div., 3d Dep't 1998) ..................................................15

*Shipes v. Amurcon Corp.*,
    No. 10-14943, 2012 WL 995362 (E.D. Mich. Mar. 23, 2012) ................................12, 13

*Sliger v. Prospect Mortg., LLC*,
    No. CIV. S-11-465, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011) .................................18

*Swales v. KLLM Transport Servs., LLC*,
    No. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021).........................................12

*Thaxton v. Bojangles' Rests.*,
    No. 1:17-cv-269, 2018 WL 11240502 (E.D. Tenn. Oct. 31, 2018).................................24

**Statutes**

29 U.S.C. § 216(b) .................................................................................12

**Other Authorities**

29 C.F.R. § 541.200(a)(2)...........................................................................16

29 C.F.R. § 541.200(a)(2)–(3).......................................................................15

29 C.F.R. § 541.201(b) .............................................................................15

29 C.F.R. § 541.203(a).............................................................................15, 17

iv

## PRELIMINARY STATEMENT

Plaintiff Kerry Ann Loomis worked as a Core Benefits Specialist[1] managing Short-Term Disability ("STD") claims for Unum Group Corporation ("Unum" or "Defendant") for approximately four years. In this action, she seeks to challenge Unum's decision to classify her position as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") under that statute's administrative exemption, which exempts insurance claims adjusters who exercise discretion and independent judgment from overtime. She also seeks to bring this case as a collective action challenging the exempt status of other Unum Benefits Specialists who manage disability claims that are very different from the STD claims she worked on, as well as Benefits Specialists in more senior positions, such as Senior and Lead Specialists, who had different and greater responsibilities.

The FLSA authorizes the Court to approve the sending of notice of this action allowing employees to opt in to this collective action, but the statute specifies that only employees who are "similarly situated" may be permitted to opt in. The purpose of a collective action is to promote judicial efficiency by permitting a collective challenge by employees who share the same or similar duties, such that a decision on the exempt status of the plaintiff will necessarily be equally applicable to all others participating in the collective action. Where the job duties of the Plaintiff differ from the duties of the others she seeks to represent in a way that potentially impacts the exempt classification, the employees are **not** similarly situated and they may not participate in a collective action. Providing notice to employees with different job duties is not appropriate and would only serve the improper purpose of fomenting litigation.

---

[1] Benefits Specialists have been referred to as Disability Benefits Specialists ("DBSs") in the past, but Defendant uses the title currently in effect.

1

We demonstrate below that Plaintiff Loomis is not similarly situated to:

- Benefits Specialists outside of the STD area, who make different types of discretionary decisions managing the very different claims for which they are responsible;

- Benefits Specialists within the STD area in Senior and Lead positions, whose duties include greater levels of responsibility and authority; and

- Other Core Benefits Specialists in the STD area, who do not require the closer supervision that Plaintiff did because of her performance issues.

Accordingly, the request to send Court-approved notice to potential opt-ins should be denied. In the event the Court were to authorize the sending of notice to a narrower group, the notice should be revised to ensure its accuracy, prevent undue invasions of privacy, and avoid the appearance of encouraging litigation.

## FACTUAL BACKGROUND

Unum, through its insuring subsidiaries, is a leading employee benefits provider that ensures millions of people have access to affordable disability, life, accident, critical illness, and other benefits. In the disability area specifically, Unum manages claims in four product areas: STD, Long-Term Disability ("LTD"), Individual Disability Insurance ("IDI"), and Long-Term Care ("LTC"). Unum employs Benefits Specialists to manage and adjudicate disability claims in each of these four product areas. This generally involves the Benefits Specialist gathering, evaluating, and analyzing all information in a claim file to determine appropriate action steps and, ultimately, advising Unum on whether or not to pay the claim. Most of Unum's Benefits Specialists have been working remotely for almost ten months due to the pandemic (and many already

performed substantial remote work before that), without any on-site supervision. (Declaration of Shelley Swinney ("Swinney Decl.") ¶ 5).

Due to the differences in the STD, LTD, IDI, and LTC products, the decisions that Benefits Specialists must make in this process vary substantially depending on which product they are managing. (*See generally* Swinney Decl.; Declaration of Stephanie Perron ("Perron Decl."); Declaration of Carol McCue ("McCue Decl."); Declaration of Carisa Ayers ("Ayers Decl.")). Moreover, in each product area, Benefits Specialists progress through four job levels—Associate, Core, Senior, and Lead—with increased discretion and authority and a more complex case load at each level. (Swinney Decl. ¶¶ 6-11; Ayers Decl. ¶¶ 6-10; McCue Decl. ¶¶ 6-9; Perron Decl. ¶¶ 6-10). Therefore, the types of discretionary decisions and recommendations Benefits Specialists at Unum make depends on both their designated product area and job level within that product area.

Plaintiff was employed initially in May 2014 as a non-exempt, overtime-eligible Associate Benefits Specialist in Unum's STD area. She was promoted to the Core level, but she never progressed past the Core level. (Swinney Decl. ¶ 13, Ex. B). Her role thus required her only to make decisions and recommendations regarding the management and payment of STD claims. (Swinney Decl. ¶ 8). As a Core Benefits Specialist, Plaintiff lacked the authority to make certain decisions and recommendations that higher-ranking Senior and Lead Benefits Specialists are empowered to make. (Swinney Decl. ¶¶ 11, Ex. A). She likewise did not engage in some of the higher level claims management duties in which Seniors and Leads participate. (Swinney Decl. ¶¶ 9-10). Finally, Plaintiff also struggled to perform up to the expectations of a Core Benefits Specialist, which resulted in ongoing performance management and subjected her to closer supervision throughout her tenure at Unum. (Swinney Decl. ¶ 14).

As set forth in more detail below, based on the differences among Unum's Benefits Specialists in the disability area and the specific differences between Plaintiff and other Core Benefits Specialists in the STD unit, Plaintiff is not similarly situated to the class of Benefits Specialists she seeks to represent.

## I.      BENEFITS SPECIALISTS WORK IN FOUR DIFFERENT PRODUCT AREAS MANAGING DIFFERENT TYPES OF CLAIMS.

Unum has Benefits Specialists working across the country in its STD, LTD, IDI, and LTC product areas. Each of these products is unique and requires different workflows and considerations for the Benefits Specialists managing and adjudicating claims in that specific area. Each area is also subject to different approval guidelines. (Swinney Decl. ¶ 11, Ex. A; Ayers Decl. ¶ 9, Ex. A; McCue Decl. ¶ 9, Ex. A; Perron Decl. ¶ 9, Ex. A).

### A.      Short-Term Disability

STD claims are unique among Unum's disability products in that they typically have an expected duration or resolution of less than six months, thus presenting a short-term liability for Unum. (Swinney Decl. ¶ 15). Because of the short claim duration, STD Benefits Specialists deal with a higher volume of claims that are resolved more rapidly than in other areas. (Swinney Decl. ¶ 16). About 20 percent of STD claims are rapid-pay, where the insured can receive specified minimum benefits for specific conditions, such as childbirth or certain surgeries. (*Id*.). The Benefits Specialist determines whether a claim qualifies as rapid-pay and can approve and pay rapid-pay claims without full medical documentation. (*Id*.). The rapid-pay process is only used in STD. (*Id*.).

The 80 percent of STD claims that are not rapid-pay often involve much more complicated issues, including whether the disability is covered or excluded as work-related or due to a pre-existing condition. Because of the higher volumes of claims in the STD area, Benefits Specialists

must make these decisions more rapidly while calling on fewer resources than Benefits Specialists in other product areas. (Swinney Decl. ¶¶ 17-18). For example, the Benefits Specialist often makes a determination based on what they see in an insured's medical records without additional input from clinical resources. (Swinney Decl. ¶ 18). They rarely, if ever, make recommendations with the benefit of a review by an onsite physician or an independent medical review. (Swinney Decl. ¶ 15). Benefits Specialists in STD bring their claims to forums to receive additional clinical and vocational input on a claim much less frequently than in other product areas because of the duration and volume constraints that are specific to STD. (Swinney Decl. ¶ 17). Unlike in other product areas, in-person surveillance and field visits are rarely used by the Benefits Specialist in connection with STD claims, and generally at the request of the customer. (Swinney Decl. ¶ 15).

Benefits Specialists in STD must also focus on facilitating the return-to-work process for insured, but unlike in the LTD area, STD Benefits Specialists less frequently consult vocational resources to assist in return-to-work strategies. (Swinney Decl. ¶ 17). They must personally undertake most of the consultation and follow up with insureds and employers to facilitate a return of the insured to work. (*Id.*).

Finally, Benefits Specialists in STD typically do not encounter benefits that are payable in cases of partial disability or where residual benefits are payable, as is often the case in LTD or IDI. (Swinney Decl. ¶ 19). Nor are they required to make judgment calls in assessing the lost income of business owners and sole proprietors, unlike Benefits Specialists in IDI. (*Id.*).

**B.** **Long-Term Care[2]**

Unlike disability benefits, LTC benefits are provided to reimburse specific types of nursing

---

[2] Since LTC claims involve payments for nursing care expenses and not payments for disability benefits, it is unclear whether they are even encompassed by Plaintiff's proposed collective definition. Nevertheless, since Plaintiff mentions LTC in her moving papers, Defendant addresses it here.

home or in-home care expenses. (Perron Decl. ¶ 12). Because of this, LTC Benefits Specialists spend time reviewing invoices for care and determining whether those invoices are consistent with the insurance policy's reimbursement provisions. (*Id.*). LTC claims arise in both individual and group coverage settings, so Benefits Specialists in this area spend substantial time reviewing and interpreting the policy provisions and definitions to determine the insured's eligibility for benefits. (*Id.*).

LTC policies range in coverage from a single year to many years, and they require ongoing claim management for an extended period. (Perron Decl. ¶ 18). Unlike in STD, LTD, and IDI, return to work is not a consideration in LTC, and Benefits Specialists do not work with vocational consultants. (Perron Decl. ¶ 17). If the insured may be able to live independently with home modifications or other assistance, the Benefits Specialist may decide to connect Unum's in-house physician or other clinicians to the insured's treating physician to discuss whether this is feasible. (*Id.*).

Because of the extended duration, LTC Benefits Specialists typically decide to utilize clinical resources when managing claims. (Perron Decl. ¶ 15). Benefits Specialists in LTC can also decide that a nurse should have a face-to-face visit with the insured. (Perron Decl. ¶ 16). This type of visit is not commonly used in other areas, and in many cases, the assessment takes the place of collecting an insured's medical records, since medical records do not always show how well the insured is able to maintain the activities of daily living (a key component of the claim analysis), and collecting such records can be costly. (*Id.*).

Unlike in other product areas, Benefits Specialists in LTC must undertake investigation to determine the type of facility where the insured is receiving care and the type of care the insured is receiving in order to determine if the claim is payable (and at what dollar amount), since only

certain types of care are compensable. (Perron Decl. ¶ 14). The Benefits Specialist may look at Medicare billing codes, invoices, or databases to better understand the claim. (*Id.*).

    **C.**    <u>**Long-Term Disability & Individual Disability Insurance**</u>

LTD and IDI claims differ from STD claims in a number of ways. Most importantly, the claims have a longer duration and represent more liability for Unum, meaning that LTD and IDI Benefits Specialists focus more on setting and monitoring the expected duration of benefits. (McCue Decl. ¶ 14; Ayers Decl. ¶ 12). In doing so, LTD and IDI Benefits Specialists are much more likely to decide to consult with and rely on clinical and vocational resources on any given claim than Benefits Specialists in the STD area. (*Id.*).

Benefits Specialists in LTD and IDI undertake long-term management of claims, unlike in STD. LTD and IDI Benefits Specialists must constantly reevaluate whether the disability is ongoing and whether the benefits determination remains supported. (McCue Decl. ¶¶ 16-17, Ayers Decl. ¶ 16). The case management process can require multiple forums, where the Benefits Specialist seeks input from clinical and vocational resources. (McCue Decl. ¶ 13; Ayers Decl. ¶ 17). Benefits Specialists must decide when to set follow up calls and make records requests based on the expected duration of the condition and then review this information to ensure that there is ongoing support for paying benefits. (McCue Decl. ¶¶ 16-17, Ayers Decl. ¶ 16).

Because of the longer claim duration and related liability, Benefits Specialists in LTD and IDI may decide to initiate social media and web searches to confirm the information reported by the insured and reflected in the medical records. (McCue Decl. ¶ 15; Ayers Decl. ¶ 13). Such decisions are rarely made in the STD area. Benefits Specialists also recommend surveillance which generally does not occur with STD claims. (*Id.*). Compared to the STD area, Benefits Specialists are more likely to decide that LTD and IDI claims should be subject to heightened clinical analysis with a nurse or on-site physician. (McCue Decl. ¶ 13; Ayers Decl. ¶ 14). They likewise may decide

7

that the claim should be further escalated for a doctor-to-doctor call, review by the designated medical officer, or an independent medical examination. (McCue Decl. ¶ 15; Ayers Decl. ¶ 14). When facilitating an insured's return to work, LTD and IDI Benefits Specialists will typically bring in a vocational resource or other resources to help determine whether they could return to work in their own or a different capacity or occupation. (McCue Decl. ¶ 17; Ayers Decl. ¶ 15).

Unlike Unum's other disability products, IDI policies are provided to and owned by an individual—not an employer—and policies are tailored to that individual. (McCue Decl. ¶ 11). As a result, eligibility requirements, the definition of disability, and the type and duration of benefits vary widely across IDI policies, and the IDI Benefits Specialist must focus on determining eligibility and how to interpret the specific policy at issue in the claim. (*Id.*). IDI Benefits Specialists often adjudicate claims of loss of income due to a partial disability, which requires analysis of financial documents and other information to assess the impact of the disability on earnings potential. (McCue Decl. ¶ 12). Benefits Specialists in IDI also encounter a large number of residual claims, where the insured may have partial income from a primary occupation or income from another job. (McCue Decl. ¶ 18).

## II.  IN EACH DISABILITY PRODUCT AREA, BENEFITS SPECIALIST DUTIES AND RESPONSIBILITIES VARY BY TITLE.

In each of Unum's four disability product areas, Benefits Specialists who manage and adjudicate disability claims hold one of four titles: Associate Benefits Specialist,[3] Core Benefits Specialist, Senior Benefits Specialist, and Lead Benefits Specialist. (Swinney Decl. ¶ 6; Ayers Decl. ¶ 6; McCue Decl. ¶ 6; Perron Decl. ¶ 6). Promotion from one level to the next is based on performance and tenure, and Benefits Specialists take on more complex cases and greater

---

[3] Associate Benefits Specialists, also known as Trainees, are classified as non-exempt and therefore excluded from the proposed collective action.

responsibilities as they progress through the levels. (Swinney Decl. ¶ 6; Ayers Decl. ¶ 6; McCue Decl. ¶¶ 7-8; Perron Decl. ¶ 8). Each level is subject to different decision approval guidelines and oversight. (Swinney Decl. ¶ 11, Ex. A; Ayers Decl. ¶ 9, Ex. A; McCue Decl. ¶ 9, Ex. A; Perron Decl. ¶ 9, Ex. A).

### A. Core Benefits Specialists

After approximately a year, Associate Benefits Specialists are promoted to the role of Core Benefits Specialist, also referred to as simply "Benefits Specialist." (Swinney Decl. ¶ 8). Core Benefits Specialists are classified as exempt, and their primary focus is on managing and deciding claims. (*Id*.). They are expected to provide excellent customer service and independently adjudicate assigned claims. (*Id*.). In the STD area, they do not have to seek review of decisions to terminate benefits by deciding to make advance payment, due to a return to work, or because the maximum duration or benefit has been paid. (Swinney Decl. ¶ 11, Ex. A).

### B. Senior Benefits Specialists

Senior Benefits Specialists are also classified as exempt. (Swinney Decl. ¶ 9). In order to be promoted to this level, Benefits Specialists must demonstrate that they have a thorough understanding of claim management, contract interpretation, and system operations. (*Id*.). They also take on additional responsibilities, including assigning claims, mentoring and closely supervising Associate Benefits Specialists, and handling coverage when other Benefits Specialists are on leave. (Swinney Decl. ¶ 9; Ayers Decl. ¶ 10; McCue Decl. ¶ 8; Perron Decl. ¶ 10). They may also be responsible for weekly calls with customers and further review of certain types of claims. (Swinney Decl. ¶ 9; Ayers Decl. ¶ 10). Many of them become subject matter experts on certain topics and act as important resources for their teams. (Swinney Decl. ¶ 9). Finally, in the STD area, they do not have to seek sign off on decisions to terminate benefits because the insured is ineligible. (Swinney Decl. ¶ 11, Ex. A).

9

C.    **Lead Benefits Specialists**

Lead Benefits Specialists are also classified as exempt and take on even greater responsibility than Senior Benefits Specialists in connection with their claims management duties. (Swinney Decl. ¶ 10; Ayers Decl. ¶ 10; McCue Decl. ¶ 8). They act as back up support for managers and learn to facilitate claim review forums with clinical and vocational resources. (*Id.*). They conduct more in-depth reviews of Core Benefits Specialists' files as needed. (*Id.*).

Lead Benefits Specialists are expected to become involved in Company projects or initiatives and suggest and help implement improvements to the claims management process. (McCue Decl. ¶ 8). They also participate in interviews of job applicants, provide input into hiring, and lead customer tours. (Swinney Decl. ¶ 10). In STD, Lead Benefits Specialists can review and provide sign off on adverse decisions due to a pre-existing disability or recommendations to transfer a claim to LTD without seeking further review. (Swinney Decl. ¶¶ 10-11, Ex. A).

III.    **PLAINTIFF WAS NOT SIMILARLY SITUATED TO OTHER BENEFITS SPECIALISTS AT UNUM.**

The sole named plaintiff here, Ms. Loomis, seeks to represent others similarly situated to her. By her definition, that includes all Benefits Specialists classified as exempt—i.e., Core, Senior, and Lead Benefits Specialists—in all four disability product areas—STD, LTD, IDI, and LTC.

However, Plaintiff only held the positions of Trainee and Core Benefits Specialist. (Swinney Decl. ¶ 13, Ex. B). Due to her performance failures, she never advanced to the Senior or Lead Benefits Specialist roles at Unum. (*Id.*). Plaintiff also never worked in any areas other than STD, and therefore did not exercise the particular discretion and independent judgment expected of an LTD, IDI, or LTC Benefits Specialist at any level. (*Id.*).

10

Across all areas, if a Benefits Specialist has performance issues, he or she will be more closely managed and have his or her determinations reviewed more closely. (Swinney Decl. ¶ 12; Ayers Decl. ¶ 8; McCue Decl. ¶ 10; Perron Decl. ¶ 11). Throughout her time at Unum, Plaintiff had repeated performance issues. Her manager identified many areas requiring improvement, including better managing her worklist and workflow, setting appropriate activities, promoting customer service and responsiveness, and improving her overall efficiency. (Swinney Decl. ¶ 14). Due to these concerns, Plaintiff was subject to closer supervision than other Benefits Specialists at her level, meaning she was potentially not exercising the same discretion and independent judgment of other Core Benefits Specialists in the STD area. (*Id.*).

Plaintiff is therefore not similarly situated to Senior or Lead Benefits Specialists or to Benefits Specialists in other product areas at Unum. Nor is she similarly situated to the Core Benefits Specialists in the STD area given the closer supervision she required.

## ARGUMENT

Defendant opposes Plaintiff's requested conditional certification and notice for three primary reasons. First, the branch of Plaintiff's motion that seeks certification based on the argument that all claims adjusters are *per se* non-exempt under the administrative exemption because they manage claims for Unum's subsidiaries that are customers rests on a meritless and widely rejected legal theory. This affords no basis for conditional certification. Second, because Plaintiff's job duties are materially different from those of the employees she seeks to represent, her exercise of discretion and judgment will differ markedly from the Benefits Specialists who work in different areas, are employed at different levels, and are not as closely supervised. Finally, Plaintiff's proposed notice program is defective in many respects, should the Court decide to send notice to a narrower group of employees.

## I.   THE STANDARD FOR CONDITIONAL CERTIFICATION.

The FLSA permits employees to pursue an action for overtime wages on their own behalf and on behalf of similarly situated individuals. 29 U.S.C. § 216(b). A trial court has discretion to intervene in the process of giving notice to such similarly situated individuals, *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989), and ensure that a class is conditionally certified "only in appropriate cases." *Frye v. Baptist Mem'l Hosp.,* No. 07-2708, 2008 WL 6653632, at *4 (W.D. Tenn. Sept. 16, 2008) (citations omitted). Collective actions under the FLSA typically proceed in two stages in this Circuit. *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006).[4] Under this approach, the Court's first-stage determination of whether to conditionally certify a class "is made using a fairly lenient standard," *Comer*, 454 F.3d at 547 (citations omitted) but "certification is by no means automatic." *Shipes v. Amurcon Corp*., No. 10-14943, 2012 WL 995362, at *10 (E.D. Mich. Mar. 23, 2012) (citation omitted). Even under the more lenient two-stage process, a plaintiff still bears the burden of showing that she and other similarly situated employees "all suffer from a single, FLSA violating policy." *Duncan-Watts v. Nestle USA*, No. 1:19 CV 01437, 2020 WL 589041, at *3 (N.D. Ohio Feb. 5, 2020) (citing *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009); *Comer*, 454 F.3d at 546–47).

When the plaintiff claims that such policy is simply that all opt-ins are improperly classified as exempt, she must still make a factual showing that the nature of the work performed by all collective members is similar. *Larson v. Rush Fitness Corp*., No. 3:12-CV-109, 2013 WL

---

[4] In Defendant's view, the two-stage process is not authorized by Supreme Court precedent or the FLSA (neither of which reference it). Indeed, the Fifth Circuit recently rejected this two-stage approach, explaining that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Swales v. KLLM Transport Servs., LLC*, No. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021). Whether the split among the Circuit Courts of Appeal will lead to Supreme Court review remains to be seen. Defendant understands that this Court is bound by Sixth Circuit precedent, but makes this argument to preserve the point in the event the law should change.

5350640, at *5 (E.D. Tenn. Sept. 23, 2013) (conditionally certifying collective action of exempt employees because "the nature of the work[] performed by the proposed members of the collective action is similar in nature to" the named plaintiff's work); *Shipes*, 2012 WL 995362, at *11 (denying conditional certification of a collective of exempt employees when plaintiff did not show that proposed collective members performed job duties similar to hers).

Conditional certification should not be granted unless Plaintiff "produce[s] a factual basis for the allegation of class-wide FLSA violations." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (citation omitted). Furthermore, the Court should consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Id.* (internal quotations omitted).

Generalized statements and second-hand knowledge are not enough to support conditional certification of a broad, nationwide collective. *See, e.g., Hughes v. Gulf Interstate Field Servs.*, No. 2:14–cv–000432, 2015 WL 4112312, at *3 (S.D. Ohio July 7, 2015) (narrowing collective to pipeline inspectors who worked on a specific project in pay rate case based on the evidence presented). In *Bauer v. Transtar Industries*, the court narrowed the collective in a misclassification case to one group of sales employees because plaintiffs "produced no evidence—or even allegations—from which the court can infer that their job duties are sufficiently similar to the other" sales employees, and defendant submitted evidence showing that job duties varied across titles. No. 1:15 CV 2602, 2016 WL 1408830, at *3 (N.D. Ohio Apr. 11, 2016); *see also Saddler v. Memphis City Schs*, No. 12-CV-2232-JTF-tmp, 2013 WL 12100720, at *6 (W.D. Tenn. Feb. 4, 2013) (excluding employees with similar job titles in same department as named plaintiff from collective in misclassification case because their duties were unknown), *report and*

*recommendation adopted by* 2013 WL 12100721 (W.D. Tenn. Mar. 27, 2013); *Duncan-Watts*, 2020 WL 589041, at *4 (denying conditional certification of collective in donning and doffing case because plaintiff failed to show that collective members were similarly situated); *see, e.g.*, *Comer*, 454 F.3d at 547 (noting the lower court's narrowing of the collective to one region, which was "the most restrictive version of the plaintiffs' proposed notification").

## II. PLAINTIFF CANNOT MEET THE STANDARD FOR CONDITIONAL CERTIFICATION BY RELYING ON THE LEGALLY MERITLESS ARGUMENT THAT ALL BENEFITS SPECIALISTS ARE PER SE NON-EXEMPT REGARDLESS OF THE DISCRETION AND JUDGMENT THEY USE IN ADJUSTING CLAIMS.

Plaintiff cannot meet the burden for first-stage conditional certification by claiming, as she does, that all Benefits Specialists at Unum are *per se* not covered by the FLSA's administrative exemption—no matter how much discretion and judgment they wield in deciding claims—because they are non-exempt production workers whose primary job duty was not directly related to the management and general business operations of Unum, but who instead provided claims adjustment services to Unum's subsidiaries that are customers of Unum. (Memorandum of Law in Support of Motion for Step-One Notice, ECF No. 52, at 18-20 ("Pl. Mem.")). Plaintiff's legal position is squarely foreclosed by the applicable FLSA regulations and cases applying them, and therefore cannot be the basis for conditional certification.

### A. Unum's Benefits Specialists Are Claims Adjusters Whose Work Falls Within the Scope of the Administrative Exemption, Whether the Claims Adjustment Services Are Provided on Behalf of Unum or its Customers.

Contrary to Plaintiff's assertions, there is no dispute—legal or factual—as to whether the claims adjustment work she performs is administrative work within the meaning of the applicable regulations. The regulations under the FLSA provide that an employee is exempt from the statute's overtime requirements if his or her duties satisfy the following two prongs:

- The employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer **or the employer's customers**," and

- The employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a)(2)–(3) (emphasis added). The regulations further define work that is "directly related to management or general business operations" as including "insurance," "employee benefits," and "similar activities." 29 C.F.R. § 541.201(b). Finally, the regulations expressly state that "[i]nsurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company." 29 C.F.R. § 541.203(a).

The regulations thus leave no doubt that insurance claims adjustment work is the type of work directly related to management or general business operations that falls within the administrative exemption. This is likewise confirmed by controlling case law. Sixth Circuit courts have uniformly held that the work of insurance claims examiners falls within the administrative exemption. *See, e.g.*, *Murray v. Ohio Cas. Corp.*, No. 2:04-CV-539, 2005 WL 2373857 (S.D. Ohio Sept. 27, 2005); *Jastremski v. Safeco Ins. Cos.*, 243 F. Supp. 2d 743 (N.D. Ohio 2003); *see also Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (finding insurance investigators exempt based on similarities between roles of investigators and claims adjusters).

Plaintiff seeks to avoid this controlling authority in two ways. First, she argues that claims adjustment work is not subject to the administrative exemption because it is non-exempt production work. For this she relies principally on *Scott Wetzel Services v. N.Y. Board of Industrial Appeals*, 682 N.Y.S.2d 304 (App. Div., 3d Dep't 1998), a case that was decided more than 20

years ago before the Department of Labor promulgated its current regulations specifying that claims adjustment work falls within the administrative exemption. This outdated case also relied on the proposition that exemptions must be narrowly construed and are available only for positions to which they clearly and unmistakably apply, a holding that the United States Supreme Court has since repudiated. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

Plaintiff ignores controlling Sixth Circuit case law to the contrary. In *Foster*, the Sixth Circuit explained that the "day-to-day production work" of an insurance company is performed by the employees who write or sell its insurance policies. 710 F.3d at 645. An insurance company's "claims adjusting function," on the other hand, is "ancillary to [its] primary production activity," and therefore directly related to the company's general business operations as set forth in the administrative exemption. *Id*. at 645–46. In light of this authority, Plaintiff's reliance on out-of-Circuit cases,[5] some of which predate the current DOL regulations,[6] is inapposite.

Alternatively, Plaintiff appears to argue that all Unum claims adjusters are *per se* non-exempt because they perform their claims adjustment services for third parties, namely Unum's insurance subsidiary customers. This argument is unsupported by any case law (other than the out-of-date *Wentzel* decision), and is again foreclosed by the plain language of the controlling regulations. Administrative work, such as claims adjustment services, falls within the administrative exemption if it is "related to the management or general business operations of the employer **or the employer's customers.**" 29 C.F.R. § 541.200(a)(2) (emphasis added). So even if the claims adjustment services are performed for Unum's customers, the work still falls within

---

[5] *Rego v. Liberty Mut. Managed Care*, 367 F. Supp. 3d 849 (E.D. Wis. 2019); *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016); *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 855 (9th Cir. 2017).

[6] *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002); *Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262 (W.D. Pa. 1985); *Reich v. Am. Int'l. Adjustment Co.*, 902 F. Supp. 321 (D. Conn. 1994).

the administrative exemption. The regulations make this very point, stating that "[i]nsurance claims adjusters generally meet the duties requirements for the administrative exemption, **whether they work for an insurance company or other type of company**." 29 C.F.R. § 541.203(a) (emphasis added); *see also Roe-Midgett v. CC Servs.*, 512 F.3d 865, 872 (7th Cir. 2008) (cited with approval in *Foster*, 710 F.3d at 645) ("CCS's customers are insurance companies in the business of selling policies, and employees who process claims against those policies are performing an administrative function for CSS's customers (i.e., a task that administers the policies 'produced' by the insurers).").

Faced with this authority, Plaintiff's attempt to obtain conditional certification based on a flawed legal theory is doomed to fail.

### B. Plaintiff Cannot Rely on a Meritless Legal Theory to Justify Conditional Certification and Nationwide Notice to Potential Opt-Ins.

Plaintiff will no doubt argue that the lack of merit in her flawed production worker claim goes to the merits and should not be addressed at this juncture. It is true that at this lenient first stage, a court will not usually consider merits arguments that are dependent on facts that have yet to be developed through discovery. But the same is not true where a Plaintiff seeks conditional certification based on a meritless legal argument that no amount of discovery can save.

To the contrary, Courts within this Circuit and elsewhere have repeatedly denied conditional certification where, as here, an FLSA exemption clearly applied. *See, e.g.*, *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004) (denying conditional certification where FLSA's outside sales exemption applied to plaintiffs); *O'Neal v. Kilbourne Med. Labs.*, No. Civil Action No. 05-50, 2007 WL 956428, at *7, *13 (E.D. Ky. Mar. 28, 2007) (denying conditional certification of a collective action after finding that the named plaintiff was exempt from the FLSA); *see also Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459,

467 (S.D.N.Y. 2008) (denying conditional certification because plaintiff and members of proposed collective were likely subject to the administrative employee exemption); *Christopher v. SmithKline Beecham Corp.*, No. CV-08-1498-PHX-FJM, 2009 WL 4051075 (D. Ariz. Nov. 20, 2009) (granting summary judgment to defendant on question of whether plaintiffs were exempt and therefore denying plaintiffs' motion for conditional certification as moot), *aff'd*, 635 F.3d 383 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012).[7]

As the *O'Neal* court explained, where resolution of an issue of FLSA exemption "depends upon [a] *purely legal issue*" the court "cannot find that [the named plaintiff] and the potential plaintiffs, were 'victims of a common policy or plan that violated the law' or that [the named plaintiff] is 'similarly situated' to other current and former" employees in the same role. 2007 WL 956428, at *7. The same is true here. Plaintiff's case is doomed by controlling legal authority that rejects her legal theory that the FLSA's administrative exemption does not apply to claims adjusters providing services to a separate insurance company. Plaintiff herself acknowledges that this is a purely legal issue involving no consideration of potentially disputed facts, which can be addressed in an early summary judgment motion. (Pl. Mem. at 20). It would be highly wasteful to authorize nationwide notice to all Benefits Specialists to participate in this action, including related discovery, only to dismiss them at a later point when this purely legal issue is decided. The Court can and should resolve the issue now and conclude that there is no basis to give notice to a nationwide collective based on Plaintiff's meritless production worker argument.

---

[7] Plaintiff cites a number of cases for the proposition that the Court should not "delve into the merits of the claims" at this stage, (Pl. Mem. at 10 n.14), but in none of these cases did the courts find purely legal issues that would render certification pointless. *Cardoso v. Pick A Part LLC*, No. CV-18-04759-PHX-SPL, 2019 WL 3973128, at *2 (D. Ariz. Aug. 22, 2019); *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 869 (S.D. Ohio 2017); *Sliger v. Prospect Mortg., LLC*, No. CIV. S-11-465, 2011 WL 3747947, at *3 (E.D. Cal. Aug. 24, 2011); *Loomis v. CUSA, LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009).

18

## III. PLAINTIFF IS NOT SIMILARLY SITUATED TO THE EMPLOYEES SHE SEEKS TO REPRESENT.

Plaintiff seeks to conditionally certify an untenably broad collective of all "Disability Benefit Specialist Employees outside of the state of California in the last three years" who were classified as exempt. (Pl. Mem. at 7). The FLSA does not define which individuals are "similarly situated," but Plaintiff bears the burden of showing that her "position is similar to that of other employees." *Duncan-Watts*, 2020 WL 589041, at *3 (citing *O'Brien*, 575 F.3d at 585; *Comer*, 454 F.3d at 546–47). This is critical, as an assessment of whether Plaintiff or any potential opt-in satisfies the administrative exemption will depend on the extent to which they exercise discretion and independent judgment, which in turn will depend on their respective job duties. Here, Plaintiff has not put forth facts showing she is similarly situated to any other Benefits Specialists.

### A. Plaintiff Is Not Similarly Situated to Benefits Specialists Working in Other Unum Disability Product Areas.

Plaintiff worked only in STD, (ECF No. 53-08 at ¶ 4), and fails to show that the duties and responsibilities of Benefits Specialists in other product areas are similar to hers. Defendant, on the other hand, has introduced substantial evidence demonstrating the differences in the types of discretionary decisions and judgment calls Benefits Specialists make across STD, LTD, IDI, and LTC. While Plaintiff's motion is supported by one declaration from a LTD Benefits Specialist, he offers nothing more than a conclusory statement as to why he is similarly situated to Plaintiff. (ECF No. 53-4 at ¶ 2).[8]

STD claims are unique among Unum's disability products in that they typically have an expected duration or resolution of less than six months, presenting a short-term liability for Unum. (Swinney Decl. ¶ 15). This leaves STD Benefits Specialists with a high volume of claims to

---

[8] Half of the declarations in support of Plaintiff's motion (ECF Nos. 53-2, 53-3, 53-5, 53-6) are from California-based Benefits Specialists, who are excluded from the proposed collective.

manage over a short period of time, meaning they typically do not have the opportunity to resort to discussing claims with clinical or vocational specialists. (Swinney Decl. ¶¶ 17-18). Instead, STD Benefits Specialists are expected to make determinations based on the information provided in the claim file, using their independent discretion and judgment.

Unlike in other product areas, Benefits Specialists in STD rarely, if ever, make recommendations to seek review by an onsite physician or an independent medical review, nor do they typically recommend in-person surveillance and field visits. (Swinney Decl. ¶ 15). Benefits Specialists in STD must focus on facilitating the return–to-work process for insureds, but unlike in the LTD area, STD Benefits Specialists are able to consult vocational resources to assist in return–to-work strategies in complex cases. (Swinney Decl. ¶ 17). Unlike for LTC claims, STD Benefits Specialists never undertake investigation to determine the type of facility where the insured is receiving care and the type of care the insured is receiving. (Perron Decl. ¶ 14).

Finally, Benefits Specialists in STD typically do not deal with benefits that are payable in cases of partial disability or where residual benefits are payable, as is often the case in LTD or IDI. (Swinney Decl. ¶ 19). Nor are they required to make judgment calls in assessing the lost income of business owners and sole proprietors, unlike Benefits Specialists in IDI. (*Id.*).

B.     **Plaintiff Is Not Similarly Situated to Benefits Specialists at Other Levels Within the STD Product Area.**

Plaintiff never advanced to the Senior Benefits Specialist or Lead Benefits Specialist level and makes no attempt to explain how those roles are similar to her own. Likewise, none of the declarants ever progressed beyond the Core Benefits Specialist role or worked in the Senior Benefits Specialist or Lead Benefits Specialist role, so their declarations afford no basis for concluding that employees with these more substantial responsibilities are similarly situated to the Plaintiff. (ECF Nos. 53-01, 53-04, 53-07 at ¶ 4). Defendant, on the other hand, has introduced

substantial evidence demonstrating the differences in discretion and responsibility among job levels, even within the same product area.

Senior and Lead Benefits Specialists are, as their titles suggest, more senior than Core Benefits Specialists, meaning they are expected to take on additional claims management duties such as mentoring trainees, serving as back-up managers, facilitating forums, and leading customer calls. (Swinney Decl. ¶¶ 9-10). Seniors and Leads also typically act as subject matter experts among their teams. (Swinney Decl. ¶ 9).

In STD specifically, additional review and sign off requirements vary depending on the Benefits Specialist's level. (Swinney Decl. ¶ 11, Ex. A). As a Core Benefits Specialist, Plaintiff was not required to seek review of decisions accepting initial liability and setting the maximum duration or terminating benefits by deciding to make advance payment and close the file, due to a return to work, or because the maximum duration or benefit has been paid. (*Id.*). Unlike Plaintiff, a Senior Benefits Specialist in STD can also decide to terminate benefits because the insured is ineligible without seeking sign off. (*Id.*). Lead Benefits Specialists can terminate benefits without further review for a disability that is a pre-existing condition. (*Id.*).

The DOL has concluded that claims specialists with different levels of supervision within the same company are **not** similarly situated for purposes of the administrative exemption. Specifically, in a DOL Opinion Letter dated August 26, 2005, the Department found that entry level claims specialists (analogous to Unum's Associates/Trainees) who were closely supervised were non-exempt, but two other levels of more senior claims specialists were exempt under the administrative exemption.

**C.**     **Plaintiff Is Not Similarly Situated to Other Core Benefits Specialists in Her Product Area.**

Plaintiff has not shown that she is similarly situated even to other Core Benefits Specialists in STD.[9] In her declaration, she recites her job duties and states that she has "belief and knowledge" about other Benefits Specialists' duties, hours, and pay policies based on conversations she had with coworkers, training sessions, and observations of her coworkers. (ECF No. 53-08 ¶¶ 13-14). Plaintiff's description of her job duties is recycled nearly word-for-word in the declarations from potential opt-in plaintiffs and there is reason to believe that her declaration and the others were drafted for a different case entirely—each declarant refers to their position at Unum as a DMSE, an abbreviation Unum does not employ. (*E.g.*, ECF No. 53-08 ¶ 3).[10] This cookie-cutter evidence does nothing to bolster Plaintiff's otherwise general and conclusory allegations that she is similarly situated to those she seeks to represent.

Additionally, throughout her time at Unum, Plaintiff's manager identified performance issues related to managing her worklist and workflow, setting appropriate activities, promoting customer service and responsiveness, and improving overall efficiency. (Swinney Decl. ¶ 14). Because of these concerns, she was likely more closely supervised than other Benefits Specialists in her area and at her level. (*Id.*). The approval and sign-off rate for a particular Benefits Specialist is directly related to their performance, meaning Plaintiff was not exercising the same discretion

---

[9] Contrary to Plaintiff's argument in her Reply in Support of Motion for Protective Order, Defendant has not "admitted" that "plaintiff is similarly situated to at least 100 other Disability Benefit Specialist Employees." (ECF No. 82 at 1). Defendant admitted in its Answer only that in the last three years it has employed at least 100 employees in the same role Plaintiff held – that of Core STD Benefits Specialist. Those Benefits Specialists have the same primary duties, but exercise varying amounts of discretion and independent judgment compared to the Plaintiff, who was more closely supervised due to performance difficulties.

[10] The Motion for Conditional Certification likewise appears to have been recycled. At page 16 of Plaintiff's Memorandum, Plaintiff argues that DBSs "ALL RELIED ON QUANTUM'S COMPREHENSIVE GUIDELINES TO MAKE DECISIONS." (Pl. Mem. at 16). Quantum is not a defendant in this action.

and independent judgment of other Core Benefits Specialists in the STD area performing in line with expectations. (Swinney Decl. ¶¶ 12, 14).

## IV.   THE COURT SHOULD NOT ADOPT PLAINTIFF'S PROPOSED NOTICE OR NOTICE PROGRAM.

No notice in this case is required. But if the Court decides to authorize notice to a narrow class, Plaintiff's proposed notice (ECF No. 53-12) does not meet the required standard because it is neither entirely accurate nor appropriately informative. Specifically, it fails to (1) inform opt-in plaintiffs that they may be required to sit for a deposition or otherwise participate in discovery, or (2) explain they may be liable for Defendant's costs. Indeed, Plaintiff's proposed notice does not even accurately reflect the collective she seeks to represent; perhaps anticipating a narrowing of her proposed class, the notice states the lawsuit covers only "Short Term Disability Specialists."

A plaintiff cannot make an informed decision to join a lawsuit without accurate information in hand. *See, e.g.*, *Pierce v. Wyndham Vacation Resorts, Inc.*, No. 3:13-CV-641-PLR-CCS, 2015 WL 574501, at *4 (E.D. Tenn. Feb. 11, 2015) (language in notice informing opt-in plaintiffs they may be liable for costs is "consistent with the case law of this District."); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075 (S.D. Ohio 2016) (requiring notice language informing opt ins that they may be liable for costs if they did not prevail on their claim because it is "necessary information for potential plaintiffs to make an informed decision about whether to opt-in.") (citations omitted); *Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012) ("The Court agrees that inclusion of a statement advising that person who opts in may be required to respond to written discovery, sit for a deposition, or testify at trial, is appropriate. Such information allows potential plaintiffs to make an informed decision as to whether they wish to opt-in to the action."); *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011) (requiring notice to include statement that opt-in

plaintiffs may be required to participate in discovery) ("Inclusion of Safelite's suggested statement would allow potential plaintiffs to make a reasoned decision about the time they would need to invest in the suit should they decided to opt-in. Courts, including this one, have approved language fully describing possible discovery requirements of opt-in plaintiffs.").

Furthermore, Plaintiff would intrude upon the privacy of potential collective members if allowed to obtain mobile telephone numbers, send notice via text message, and send a reminder notice. (Pl. Mem. at 24). Telephone numbers are highly private and should not be disclosed, absent cause or a particularized showing of need. *Thaxton v. Bojangles' Rests.*, No. 1:17-cv-269, 2018 WL 11240502, at *5 (E.D. Tenn. Oct. 31, 2018); *McClain v. First Acceptance Corp.*, No. 3:17-cv-00408, 2017 WL 3268026, at *5 (M.D. Tenn. Aug. 1, 2017). Plaintiff has made no such showing as to why this sensitive information should be disclosed at this juncture.

Courts in this district have also consistently held that first class mail and email—neither of which require the use of telephone numbers—are the appropriate methods of notice. *Melton v. Lawrence*, No. 1:18-cv-167-SKL, 2018 WL 5723942, at *9 (E.D. Tenn. Oct. 31, 2018) (citing *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674-TRM-HBG, 2018 WL 2014548, at *4 (E.D. Tenn. Apr. 30, 2018)) (collecting cases). Notice via text message would unnecessarily intrude on the privacy of potential opt-in plaintiffs and may be viewed as spam or even harassing in nature. *Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13942, 2017 WL 1856276, at *9 (E.D. Mich. May 9, 2017); *see also Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *11 (S.D. Ohio Sep. 25, 2019) (denying notice via text message absent further permission from the Court) ("The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so.").

Finally, reminder notices are unnecessary and routinely denied in this Court. *See, e.g.*, *Melton*, 2018 WL 5723942, at *9 ("[T]his Court has declined to allow the use of reminder notices.") (citation omitted). Other courts in this Circuit have found that issuance of a reminder notice is likely to "unnecessarily stir up litigation or improperly suggest the Court's endorsement of plaintiff's claims." *Davis*, 2018 WL 2014548, at *4 (citing *Fenley*, 170 F. Supp. 3d at 1075). Plaintiff's request to send a reminder notice should therefore be denied.

In the event that it approves conditional certification and notice, the Court should order that Plaintiff meet and confer with Defendant regarding the mail and email notice language to ensure that it is accurate and informative. Additionally, in the interests of privacy, the Court should deny Plaintiff access to potential opt-ins' telephone numbers and prohibit both reminder notice and notice via text message.[11]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Step-One Notice Pursuant to the Fair Labor Standards Act.

---

[11] If the Court does require disclosure of phone numbers, the Court's order should provide that the number (and all other contact information) can only be used for the purpose of sending any Court approved notice. The Order should prohibit any solicitation of potential opt-ins.

Dated: January 28, 2021
New York, New York

Respectfully submitted,

PAUL HASTINGS LLP

By

Patrick W. Shea (*pro hac vice*)
Julia G. Mix (*pro hac vice*)
patrickshea@paulhastings.com
juliamix@paulhastings.com
200 Park Avenue
New York, New York 10166
Phone: (212) 318-6000
Fax: (212) 319-4090

MILLER & MARTIN PLLC

Charles B. Lee
Jenna Fullerton
chuck.lee@millermartin.com
jenna.fullerton@millermartin.com
Volunteer Building Suite 1200
832 Georgia Avenue
Chattanooga, Tennessee 37402-2289
Phone: (423) 756-6600
Fax: (423) 785-8480

*Attorneys for Defendant*
*Unum Group Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by United States Mail, facsimile, or hand delivery. Parties may access this filing through the Court's electronic filing system.

This 28th day of January 2021.

Patrick W. Shea

LEGAL_US_E # 153150998.8