UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KERRY ANN LOOMIS, individually and on behalf of others similarly situated, | ) ) ) |
| *Plaintiff*, | ) Case No: 1:20-CV-251 |
| v. | ) ) Judge Collier |
| UNUM GROUP CORPORATION, | ) Magistrate Judge Steger ) |
| *Defendant*. | ) |

# **M E M O R A N D U M**

Before the Court are three motions: Plaintiff Kerry Ann Loomis's motion for step-one notice pursuant to the Fair Labor Standards Act (Doc. 51), Defendant Unum Group Corporation's motion for oral argument on Plaintiff's motion (Doc. 86), and Defendant's motion for leave to file a sur-reply (Doc. 88).

## **I.    BACKGROUND**

On September 1, 2020, Plaintiff filed a complaint, individually and on behalf of others similarly situated, asserting Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by classifying its Disability Benefits Specialists as exempt employees, as well as other claims. (Doc. 1.) Plaintiff brought her FLSA claim as a putative collective action (*id.* at 5–6) and moved for step-one notice, also known as conditional certification, on November 21, 2020 (Doc. 51).[1]

---

[1] In her briefing, Plaintiff placed several citations to authority in footnotes. (*See, e.g.*, Doc. 54 at 8–16.) Plaintiff is directed to item 46 of the judicial preferences of the undersigned, regarding the placement of citations to authority within the text of a document (*see, e.g.*, Docs. 54, 85). *See* Judicial Preferences, available at https://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge.

Defendant is an employee-benefits provider that provides several categories of coverage to individuals and businesses. Defendant's Disability Benefits Specialists are responsible for processing disability claims submitted to Defendant. The Disability Benefits Specialists at issue in this case work in one of three departments: Short-Term Disability ("STD"), Long-Term Disability ("LTD"), and Individual Disability Insurance ("IDI").[2] (*See* Doc. 84 at 7.)

In support of her motion for conditional certification, Plaintiff attaches declarations of eight Disability Benefits Specialists, including her own. (Docs. 53-1–8.) Kristen Harvey was a Disability Benefits Specialist in the STD department between December 2015 and January 2019. (Doc. 53-1 ¶¶ 1, 4.) Adrine Gadakian worked as a Disability Benefits Specialist in the LTD department from February 2017 to March 2019. (Doc. 53-2 ¶¶ 1, 4.) Arbi Haghverdian worked as a Disability Benefits Specialist in the LTD department from June 2017 to May 2019. (Doc. 53-3 ¶¶ 1, 4.) John Ochira worked as a Disability Benefits Specialist in the LTD department from July 2016 to July 2018. (Doc. 53-4 ¶¶ 1, 4.) Peter Park worked as a Disability Benefits Specialist in the LTD department from February 2017 to July 2019. (Doc. 53-5 ¶¶ 1, 4.) Luis Salas worked as a Disability Benefits Specialist in the LTD department from December 2017 to December 2018. (Doc. 53-6 ¶¶ 1, 4.) Alexandria Savini worked as a Disability Benefits Specialist in the STD department from June 2017 to December 2018. (Doc. 53-7 ¶¶ 1, 4.) Finally, Plaintiff worked as a Disability Benefits Specialist in the STD department from January 2015 to January 2019. (Doc. 53-8 ¶¶ 1, 4.)

These eight declarants state that, regardless of job title, their primary job duty was "processing disability insurance claims in accordance with predetermined guidelines within

---

[2] Disability Benefits Specialists also work in the Long-Term Care department, but Plaintiff does not seek to include those employees in her collective class. (*See* Doc. 85 at 2.)

specified time frames." (Docs. 53-1–8 ¶ 2.)  To do so, their daily job duties included requesting and gathering medical and employment information, sharing information and documents with supervisors and other specialized staff to receive processing guidance, inputting information into Defendant's computer system and into template approval or denial forms, reviewing claims against approval criteria and policies, and calling claimants to inform them of decisions, among other tasks.  (*Id.* ¶ 6.)  Each declarant states he or she had little authority to make the decisions on the claims independently and, instead, performed duties pursuant to Defendant's policies, procedures, and guidelines.  (*Id.* ¶¶ 7–8.)  These declarants aver they regularly worked over forty hours per week but were not paid overtime compensation by Defendant.  (*Id.* ¶ 12.)

>Plaintiff asks the Court to conditionally certify the following class:
>
>All salaried Disability Benefits Specialists ("Benefits Specialists") who worked for Unum at any time since [insert date three years prior].  Benefits Specialists include STD Benefits Specialist, LTD Benefits Specialist, and IDI Benefits Specialists regardless of level (i.e., "Core", "Senior", or "Lead") and any other employee, however titled, whose job duties included processing disability claims using the guidelines in Unum's Benefit Center Claims Manual ("Collective Action Members").

(Doc. 85 at 2 (brackets in original).)  Plaintiff has attached a proposed notice to be sent to this collective class.  (Doc. 85-1.)

Defendant opposes Plaintiff's motion for conditional certification.  Defendant asserts the FLSA's administrative exemption applies and therefore precludes conditional certification.  (Doc. 84 at 19–22.)  Defendant also contends Plaintiff is not similarly situated to the collective class based on department assignments, seniority level, and need for supervision.  (*Id.* at 2.)  If the Court conditionally certifies a collective class, Defendant notes Plaintiff's proposed notice is defective in several respects.  (*Id.* at 28–30.)

3

Plaintiff has filed a reply. (Doc. 85.) Defendant has filed motions for oral argument and for leave to file a sur-reply, contending Plaintiff's reply raises new issues and mischaracterizes Defendant's position and the law. (Docs. 86, 88.)

Plaintiff's motion for conditional certification (Doc. 51), Defendant's motion for oral argument (Doc. 86), and Defendant's motion for leave to file a sur-reply (Doc. 88) are now ripe.

## II. LEGAL STANDARD

Under the FLSA, an employer must pay an employee time-and-a-half for labor exceeding forty hours per week. 29 U.S.C. § 207(a). Section 216(b) of the FLSA allows an employee to maintain a collective action against an employer for violations of the FLSA on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). A plaintiff bears the burden of showing she is similarly situated to the potential opt-in plaintiffs. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

The Court of Appeals for the Sixth Circuit uses a two-stage process to determine whether a particular group of plaintiffs are "similarly situated" under the FLSA. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–67 (6th Cir. 2006); *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."). "The purpose of the first stage, or conditional certification, is to provide notice to potential plaintiffs and to present them with an opportunity to opt in." *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 757–58 (W.D. Tenn. 2011). "The threshold issue in deciding whether to authorize notice to the proposed class members is whether the Plaintiffs have demonstrated that they and the proposed class members are 'similarly situated.'" *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 366 (E.D. Tenn. 2006). "The second stage is final certification, which occurs toward the end

of discovery and must satisfy a stricter standard." *Saddler v. Memphis City Schs.*, No. 12-CV-2232-JTF-tmp, 2013 WL 12100720, at *3 (W.D. Tenn. Feb. 4, 2013).

### III. DISCUSSION

Defendant's motions for oral argument and for leave to file a sur-reply affect the Court's consideration of Plaintiff's motion for conditional certification, so the Court will address Defendant's motions before addressing Plaintiff's motion.

#### A. Defendant's Motions for Oral Argument and for Leave to File a Sur-Reply

The Court typically does not hold oral arguments on motions. *See* Judicial Preferences, available at https://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge (Preference No. 5). Even so, a party may move for oral argument if it "believes oral argument would be of particular benefit." *Id.* Defendant moves for oral argument on Plaintiff's motion for conditional certification, arguing Plaintiff's reply raises new arguments to which Defendant needs to respond. (Doc. 86.) Plaintiff has responded that oral argument would not be useful and that a sur-reply is more appropriate to address any alleged new arguments. (Doc. 87.) The Court finds oral argument is not necessary to adequately address Plaintiff's motion for conditional certification. The parties have provided sufficient briefing on all relevant issues and to hold oral argument would provide little to no benefit. Thus, Defendant's motion for oral argument (Doc. 86) will be **DENIED**.

Defendant also moves for leave to file a sur-reply to Plaintiff's conditional-certification motion. (Doc. 88.) Defendant asserts Plaintiff's reply "contains new arguments, mischaracterizes [Defendant's] position, and misstates the [Department of Labor] Opinion Letters applicable to claims handlers." (*Id.* at 2.) In general, "sur-replies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Crenshaw v. Portfolio*

*Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020) (quoting *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-CV-00048-GNS, 2019 WL 3536038, at *14 (W.D. Ky. Aug. 2, 2019)). However, a sur-reply may be appropriate when the movant raises new issues in its reply brief, and the decision to permit a sur-reply is one within the Court's discretion. *Id.*

After reviewing the parties' briefs, the Court finds Plaintiff's reply does not raise any new arguments. Plaintiff cites Department of Labor Opinion Letters to address the administrative exemption, an issue first raised in Plaintiff's motion and further discussed in Defendant's response. To the extent Plaintiff may have mischaracterized Defendant's positions, "[i]t is not the function of a surreply, but the function of the Court to 'determine whether the parties before it have accurately presented the facts, the opposing parties' arguments, and the applicable propositions of law, or whether the parties have mischaracterized the facts, arguments, and legal propositions." *Kondash v. Kia Motors Am., Inc.*, No. 1:15-cv-506, 2019 WL 7820563, at *2 (S.D. Ohio Dec. 16, 2019) (quoting *Aerpio Pharms., Inc. v. Quaggin*, No. 1:18-cv-794, 2019 WL 4717477, at *7 (S.D. Ohio Sept. 26, 2019)). The Court therefore will **DENY** Defendant's motion for leave to file a sur-reply (Doc. 88).

### B. Plaintiff's Motion for Conditional Certification

Plaintiff moves for conditional certification of her collective class, which requires the Court to determine whether Plaintiff and the potential opt-in plaintiffs are "similarly situated." *See Comer*, 454 F.3d at 546. The Court first considers Defendant's argument that the FLSA's administrative exemption precludes collective certification and, finding it does not, next considers whether Plaintiff has met her burden to authorize conditional certification.

6

### 1. Whether the FLSA's Administrative Exemption Precludes Conditional Certification

The administrative exemption exempts "any employee employed in a bona fide . . . administrative capacity" from the FLSA's overtime requirements. 29 U.S.C. § 213(a); *see Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013). Defendant argues conditional certification is inappropriate because the FLSA's administrative exemption applies to Plaintiff and all potential class members. (Doc. 84 at 19–23.)

"At the conditional certification stage, the trial court generally does not consider the merits of plaintiff's claims." *See Penarouque v. Century Park Assocs., LLC*, No. 1:18-cv-122, 2019 WL 11271273, at *1 (E.D. Tenn. Jan. 31, 2019) (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) and *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1075–76 (M.D. Tenn. 2015)). Accordingly, "a defendant's assertion of the potential applicability of an exemption [at the first stage] should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff." *White*, 236 F.R.D. at 373; *see also Waggoner*, 110 F. Supp. 3d at 769 ("It would be inappropriate to consider the merits of defendant's defense [of executive exemption] at this time, before the record has been developed."); *Bradford*, 137 F. Supp. 3d at 1075–76 ("[Defendant's] substantive arguments against certification that are based upon the merits of the plaintiffs' FLSA case are premature.").

Rather, such a decision should be made at the second stage, "following discovery, [where] trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The court then can evaluate "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact on certifying the action as a collective action." *O'Brien*, 575 F.3d at 584 (internal quotation marks omitted).

7

Declining to evaluate the applicability of an exemption at the first stage is consistent with the approaches taken by this Court and other courts within this Circuit.[3] Defendant's reliance on two in-circuit cases to argue otherwise is misplaced. (*See* Doc. 84 at 22–23 (discussing *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545 (E.D. Mich. 2004), and *O'Neal v. Kilbourne Med. Lab'ys, Inc.*, No. 05-50, 2007 WL 956428 (E.D. Ky. Mar. 28, 2007)).) Both cases applied a higher burden for conditional certification because some discovery had been completed. *See Olivo*, 374 F. Supp. 2d at 548 n.1; *O'Neal*, 2007 WL 956428, at *6. This heightened burden applied, and the exemption was considered, because "[c]ourts considering whether an exemption applies typically do so . . . after some discovery on the issue." *Waggoner*, 110 F. Supp. 3d at 769 (quoting *Killion v. KeHE Distrib.*, Nos. 3:12 CV 470, 3:12 CV 1585, 2012 WL 5385190, at *4 (N.D. Ohio Oct. 31, 2012). The Court declined to permit any discovery prior to conditional certification (Doc. 83), and as a result, a decision on the applicability of a FLSA exemption is not appropriate. Thus, the Court declines to decide whether the FLSA's administrative exemption applies, as doing so improperly delves into the merits of Plaintiff's and potential opt-in plaintiffs' claims.

### 2. Whether Plaintiff Satisfies the Burden for Conditional Certification

The Court's sole focus is whether Plaintiff has met her burden to show she is similarly situated to the putative collective class.[4] *See White*, 236 F.R.D. at 373. The FLSA does not define

---

[3] *See, e.g.*, *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006); *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674, 2018 WL 11225871, at *4 (E.D. Tenn. Mar. 2, 2018); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 769 (N.D. Ohio 2015); *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1075–76 (M.D. Tenn. 2015).

[4] The Court does not evaluate Defendant's evidence to make this determination, as district courts typically do not consider such evidence at the first stage. *See, e.g.*, *Russell v. Grubb & Assocs., Inc.*, No. 3:18-CV-463, 2019 WL 5872476, at *6 (E.D. Tenn. Aug. 15, 2019) (declining to weigh "conflicting declarations regarding the number of hours worked and compensation of travel time"); *Waggoner*, 110 F. Supp. 3d at 769 ("[T]he weight to be given to any declaration that is contradicted by subsequent deposition testimony is a matter best reserved for the second stage

"similarly situated," and neither has the Sixth Circuit. *O'Brien*, 575 F.3d at 567. A plaintiff must make a "modest factual showing" that she and potential opt-in plaintiffs are similarly situated with respect to the conduct alleged in the complaint. *Comer*, 454 F.3d at 547. This is accomplished by a showing that the plaintiff and potential opt-in plaintiffs "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs," or that their "claims [are] unified by common theories of defendant's statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 567; *see also Waggoner*, 110 F. Supp. 3d at 765.

The legal standard at the first stage has been characterized as "fairly lenient" and therefore "typically results in conditional certification." *Comer*, 454 F.3d at 547; *see also Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-cv-01155-JDB-egb, 2011 WL 1256625, at *16 (W.D. Tenn. Mar. 31, 2011) (finding "factually-detailed complaint" and "affidavit[s]" from the named plaintiff and two other employees to be sufficient to conditionally certify collective action); *White*, 236 F.R.D. at 366 (quoting *Mooney v. Armco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)) (stating conditional certification decision is "usually based only on the pleadings and any affidavits which have been submitted"). "[T]he plaintiff must show only that [her] position is similar, not identical, to the positions held by putative class members." *Comer*, 454 F.3d at 546–47. To make this determination, "courts consider factors such as '(1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and (3) whether there is evidence of

---

of the proceedings."); *Saddler v. Memphis City Schs.*, No. 12-CV-2232-JTF-tmp, 2013 WL 12100720, at *5 (W.D. Tenn. Feb. 4, 2013) ("To the extent [the plaintiff's] statements contradict certain portions of her deposition testimony or the countervailing evidence presented by [the defendant], the court should not resolve these witness credibility issues or factual disputes at the conditional certification stage.").

9

a 'widespread' discriminatory plan affecting those plaintiffs, which was maintained by defendants." *Waggoner*, 110 F. Supp. 3d at 765 (citing *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014)).

Plaintiff has submitted eight declarations, including her own, of former Disability Benefits Specialists and job descriptions from job postings for Disability Benefits Specialist positions. (*See* Docs. 53-1–11.) The Court turns first to the eight declarations and then to the job descriptions to determine whether Plaintiff's evidence justifies conditional certification.

All eight declarants worked as Disability Benefits Specialists[5] for some time between January 2015 and July 2019, with three in the STD department (Doc. 53-1 ¶ 4; Doc. 53-7 ¶ 4; Doc. 53-8 ¶ 4) and five in the LTD department (Doc. 53-2 ¶ 4; Doc. 53-3 ¶ 4; Doc. 53-4 ¶ 4; Doc. 53-5 ¶ 5; Doc. 53-6 ¶ 4). Their primary job duty was "[p]rocessing disability insurance claims in accordance with predetermined guidelines within specified time frames." (Docs. 53-1–53-8 ¶ 4.) Regardless of the product area to which they were assigned or their level, the declarants had little authority to independently make decisions on claims and instead acted pursuant to policies, procedures, criteria, and guidelines set forth in Defendant's Claims Manual. (*Id.* ¶¶ 7–8.) The declarants regularly worked over forty hours per week but were not paid overtime. (*Id.* ¶ 12.)

The declarations are sufficient to establish Plaintiff is similarly situated to potential opt-in plaintiffs who worked as Disability Benefits Specialists in the STD and LTD departments. "These declarations uniformly show: (1) employment with [Defendant]; (2) the job title for which certification is sought; (3) performance of similar job duties under the job title . . .; (4) payment of wages; (5) work performed (a) for no wage, and/or (b) in excess of forty hours per week without

---

[5] The declarants' job titles included, often along with their specific product area, Disability Specialist, Benefits Specialist, Disability Benefits Specialist, Disability Claims Examiner, and Disability Benefit(s) Claim Analyst.

overtime compensation by [Defendant]; and (6) job duties and requirements that do not meet the requirements of any exemptions to the FLSA." *See Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 748 (M.D. Tenn. 2018).[6]

However, the declarations provide no information regarding Disability Benefits Specialists in the IDI department and therefore cannot show Plaintiff is similarly situated to such employees. *See Saddler*, 2013 WL 12100720, at *6 ("She has not provided the court with any basis – either in her complaint, her Motion to Certify, or her affidavit – to find that these other accounting employees are similarly situated."); *Bauer v. Transtar Indus.*, No. 1:15CV2602, 2016 WL 1408830, at *3 (N.D. Ohio Apr. 11, 2016) ("But plaintiffs have produced no evidence-or even allegations-from which the court can infer that their job duties are sufficiently similar to the other non-inside types of sales representatives that [the defendant] employs to include them in the conditional class."). Therefore, the Court turns to the job descriptions for Disability Benefits Specialists.[7]

"Numerous courts have recognized the probative value of company job descriptions in considering whether employees are similarly situated for the purpose of conditional certification." *Saddler*, 2013 WL 12100720, at *5. Plaintiff provides two job descriptions that refer to Disability Benefits Specialists in the IDI department. (*See* Doc. 53-11 at 16, 66 (emphasis added) ("The Disability-Benefits Claims Analyst team is key to providing superior claim management to our

---

[6] Although the district court in *Crosby* mentioned FLSA exemptions at the first stage, it did not analyze whether any exemptions actually applied to the plaintiff's or potential opt-in plaintiffs' claims. *See Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 748–49 (M.D. Tenn. 2018) (declining to "substantively address the merits of the [defendant's] defenses at this juncture").

[7] Because the Court has concluded the declarations establish Plaintiff is similarly situated to Disability Benefits Specialists in the STD and LTD departments, the Court need not consider the additional evidence of similarity in the job descriptions for those departments.

customers for Short Term, Long Term and/or *Individual Disability* claims.").)  Both descriptions state this position's principal duties and responsibilities include to: "[e]valuate and analyze claim files to determine appropriate adjudication of claims," "[e]nsure appropriate eligibility requirements and liability decisions," and be "[r]esponsible for timely and accurate claims review, [and] initiation and completion of appropriate claim validation activities."  (*Id.* at 16–17, 67.)

The job descriptions show Plaintiff is similarly situated to Disability Benefits Specialists in the IDI department, as they performed similar job duties.  *See Crosby*, 348 F. Supp. 3d at 748.  In fact, the job descriptions refer to the STD, LTD, and IDI departments, which is further support that Disability Benefits Specialists in those departments had similar duties and suffered from the same allegedly FLSA-violating policy.  *See Wade v. Werner Trucking Co.*, No. 2:10-CV-00270, 2012 WL 5378311, at *5 (S.D. Ohio Oct. 31, 2012) ("A comparison of the job descriptions reflects that the purposes and functions of fleet managers and coordinators are similar, if not the same.").  As compared to Disability Benefits Specialists in the STD and LTD departments, there is less particularized information for those in the IDI department, but that "can be further developed through discovery after conditional certification."  *See Saddler*, 2013 WL 12100720, at *5.

Defendant relies on three arguments to oppose conditional certification, all of which are without merit.

First, Defendant asserts Plaintiff is not similarly situated because she worked only in the STD department and only at the Trainee and Core levels.  (Doc. 84 at 9–15.)  Defendant asserts that job duties varied within each department and that discretion varied based on the employee's level.  (*Id.*)  However, "variation among job duties or titles is often not relevant to determining if a proposed class is similarly situated."  *Duncan-Watts v. Nestle USA*, No. 1:19CV01437, 2020 WL 589041, at *3 (N.D. Ohio Feb. 5, 2020); *see also Larson v. Rush Fitness Corp.*, No. 3:12-CV-109,

12

2013 WL 5350640, at *5 (E.D. Tenn. Sept. 23, 2013) (finding that regardless of factual differences, "the nature of the work[] performed by the proposed members of the collective action [was] similar in nature to" the plaintiff's work). Such "argument and evidence [is] best left for consideration at the decertification stage." *Waggoner*, 110 F. Supp. 3d at 769–70. These factual differences do not negate Plaintiff's showing that she is similarly situated to the potential opt-in plaintiffs, at least based on the lenient standard at this stage.

Second, Defendant asserts Plaintiff's alleged performance issues prevent her from being similarly situated to potential opt-in plaintiffs, as she required more oversight than the typical Disability Benefits Specialist. (Doc. 84 at 27–28.) "'[D]isparate factual and employment settings of the individual plaintiffs' should be considered at the second stage of the analysis." *White*, 236 F.R.D. at 373 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). Thus, this argument is without merit.

Third, Defendant notes that, so far, Plaintiff has successfully recruited few opt-in plaintiffs. (Doc. 92.) However, "in the Sixth Circuit there is no controlling precedent requiring plaintiffs to show sufficient interest among members of the putative class in joining the litigation." *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-cv-00583, 2019 WL 4242409, at *5 (M.D. Tenn. Sept. 6, 2019); *see also Bradford*, 137 F. Supp. 3d at 1077 ("[T]here is no controlling precedent in the Sixth Circuit regarding this specific issue."). The Court declines to impose such a requirement in this case and therefore will not consider how many opt-in plaintiffs have joined this action so far. *See, e.g.*, *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *8 (E.D. Mich. Mar. 23, 2012) ("[T]he Court is not persuaded by [the defendant's] argument that [p]laintiffs must provide evidence that other employees wish to opt in before the Court conditionally certifies a collective class.").

In sum, the eight declarations of former Disability Benefits Specialists and the job descriptions, taken together, show Plaintiff is similarly situated to potential opt-in plaintiffs. Plaintiff and the potential opt-in plaintiffs were subject to the same alleged FLSA-violating policy: misclassification as exempt and failure to pay overtime. The Court therefore will **GRANT** Plaintiff's motion (Doc. 51) **IN PART** and conditionally certify the following collective class:

> All salaried Disability Benefits Specialists who worked for Unum Group Corporation in the Short-Term Disability, Long-Term Disability, or Individual Disability Insurance departments, regardless of level (i.e., Core, Senior, or Lead), at any time since three years before May 13, 2021, and whose job duties included processing disability claims using the guidelines in Unum's Benefit Center Claims Manual. "Disability Benefits Specialists" include, but are not limited to, the following job titles: Disability Benefit(s) Specialist, Disability Specialist, Benefit(s) Specialist, Disability Claims Examiner, Disability Benefit(s) Claim Analyst, and Life Event Specialist.

Defendant will be **ORDERED** to provide Plaintiff with a list of the potential opt-in plaintiffs in an electronic and importable format **within twenty-eight days of entry of the accompanying Order**. This list shall include the following information: name, dates of employment, job title(s) held, last known physical address, and last known personal email address.

### C. Notice to Potential Opt-In Plaintiffs

As Plaintiff will be permitted to send notice to potential opt-in plaintiffs, the next question is the appropriate substance and scope of the notice. Plaintiff has filed a proposed notice (Doc. 85-1), to which Defendant objects (Doc. 84).

Now that the Court has resolved the disputed question of whether to conditionally certify the collective class, the Court finds it appropriate to "require the parties to confer about the language to be included in the Notice and Consent Form, with the goal being to reach an agreement." *Crosby*, 348 F. Supp. 3d at 750–51. The Court expects the parties to collaborate in

good faith and make every effort to resolve any disagreements regarding the proposed notice, such that any disputes can be resolved without further assistance of the Court.

Accordingly, the parties will be **ORDERED** to confer and to submit agreed notice and consent forms **within twenty-eight days of entry of the accompanying Order**. If the parties cannot agree, Plaintiff shall file her proposed form **within twenty-eight days of entry of the accompanying Order**, Defendant may file its specific objections **within seven days** of Plaintiff's filing, and Plaintiff may respond to Defendant's objections **within five days**.

To give guidance to the parties as they confer on the notice's contents, the Court will decide the three issues already raised by the parties: (1) the inclusion of language regarding opt-in plaintiffs' possible responsibility for costs; (2) notice by text message; and (3) reminder notices. Each issue is addressed in turn.

### 1. Opt-In Plaintiffs' Obligations Regarding Costs

Defendant asserts Plaintiff's proposed notice is defective because it fails to inform potential opt-in plaintiffs that they may be liable for Defendant's costs.[8] (Doc. 84 at 28.) Plaintiff argues such information will chill participation. (Doc. 85 at 17.)

"Courts across the country are split on this issue" of whether to include information regarding possible responsibilities for costs in the notice to potential opt-in plaintiffs. *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1075 (S.D. Ohio 2016). Some courts have held that "[b]eing made aware of the possibility of being held liable for [the defendant's] costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff." *Heaps v. Safelite Solutions, LLC*, No. 1:10-CV-729, 2011 WL

---

[8] Defendant also objected to the proposed notice's failure to discuss opt-in plaintiffs' discovery obligations (Doc. 84 at 28), but Plaintiff has since agreed to include such information in the notice (Doc. 85 at 17).

15

1325207, at *8 (S.D. Ohio Apr. 5, 2011); *see, e.g.*, *Fenley*, 170 F. Supp. 3d at 1075; *Cook v. Brewster Cheese Co.*, No. 5:20-cv-0445, 2020 WL 5891904, at *7 (N.D. Ohio Oct. 5, 2020). However, other courts have considered that "[l]anguage informing potential putative class members of fees and costs could unfairly dissuade participation." *Sutton v. Diversity at Work Grp., Inc.*, No. 1:20-cv-682, 2020 WL 7364535, at *6 (S.D. Ohio Dec. 15, 2020) (quoting *Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-CV-3812, 2020 WL 1929383, at *10 (S.D. Ohio Apr. 21, 2020)).

The Court finds it appropriate for the notice to include information about costs, as "the [n]otice must apprise opt-in plaintiffs of their potential responsibilities and liabilities if they decide to opt-in to this suit." *See York v. Velox Express, Inc.*, No. 3:19-cv-092, --- F. Supp. 3d ---, 2021 WL 918768, at *7 (W.D. Ky. Mar. 10, 2021).

### 2. Notice by Text Message

Plaintiff proposes that notice be sent to potential opt-in plaintiffs by text message, as well as by mail and email. (Doc. 52 at 24.) Defendant opposes notice by text message, contending it intrudes on the potential opt-in plaintiffs' privacy. (Doc. 84 at 29–30.)

"[C]ourts within the Sixth Circuit have routinely approved dual notification through regular mail and email." *Crosby*, 348 F. Supp. 3d at 751–52 (quoting *Evans v. Caregivers, Inc.*, No. 3:17-cv-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017)); *see also Russell v. Grubb & Assocs., Inc.*, No. 3:18-CV-463, 2019 WL 5872476, at *8 (E.D. Tenn. Aug. 15, 2019) ("Consistent with this Court's past practice, the Court finds first-class mail and email are appropriate."). "[W]here defendants have objected to the use of text messages, the majority of courts in this district have declined to allow plaintiffs to notify putative class members via text message unless notice

16

through other methods is ineffective." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *11 (S.D. Ohio Sept. 25, 2019).

Plaintiff has provided no specific reason why notice by text message is necessary in this case, and Defendant has objected to notice by this method. Therefore, Plaintiff will not be allowed to send notice by text message. However, Plaintiff will be permitted to seek permission from the Court to provide notice by text message if Plaintiff can show that notice by mail and email is insufficient as to one or more specific potential plaintiffs, such as if both mail and email notices to a particular individual were returned as undeliverable. *See, e.g.*, *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1044–45 (S.D. Ohio 2018).

### 3. Reminder Notices

Plaintiff proposes reminder notices be sent to potential opt-in plaintiffs. (Doc. 54 at 23–25.) Defendant opposes reminder notices, arguing they are intrusive and unnecessary. (Doc. 84 at 29–30.) "[R]eminder notices are duplicative and unnecessary." *Canaday v. Anthem Cos., Inc.*, 439 F. Supp. 3d 1042, 1049 (W.D. Tenn. 2020). In addition, a "reminder notice could be construed as encouraging putative plaintiffs to join this action." *Canaday v. Anthem Cos., Inc.*, 441 F. Supp. 3d 644, 654 (W.D. Tenn. Jan. 3, 2020) (R&R); *see also Cowan*, 2019 WL 4667497, at *13. Thus, Plaintiff will not be permitted to send reminder notices to potential opt-in plaintiffs.

### IV. CONCLUSION

The Court will **ORDER** as follows:

1. Defendant's motion for oral argument (Doc. 86) will be **DENIED**;

2. Defendant's motion for leave to file a sur-reply (Doc. 88) will be **DENIED**;

3. Plaintiff's motion for conditional certification (Doc. 51) will be **GRANTED IN PART**, and the Court will conditionally certify the following collective class:

17

       a. All salaried Disability Benefits Specialists who worked for Unum Group Corporation in the Short-Term Disability, Long-Term Disability, or Individual Disability Insurance departments, regardless of level (i.e., Core, Senior, or Lead), at any time since three years before May 13, 2021, and whose job duties included processing disability claims using the guidelines in Unum's Benefit Center Claims Manual. "Disability Benefits Specialists" include, but are not limited to, the following job titles: Disability Benefit(s) Specialist, Disability Specialist, Benefit(s) Specialist, Disability Claims Examiner, Disability Benefit(s) Claim Analyst, and Life Event Specialist.

4. Defendant will be **ORDERED** to provide Plaintiff with a list of the potential opt-in plaintiffs in an electronic and importable format **within twenty-eight days of entry of the accompanying Order**, and this list shall include the following information: name, dates of employment, job title(s) held, last known physical address, and last known personal email address.

5. The parties will be **ORDERED** to confer and to submit proposed agreed notice and consent forms **within twenty-eight days of entry of the accompanying Order**. If the parties cannot agree, Plaintiff shall file her proposed form **within twenty-eight days of entry of the accompanying Order**, Defendant may file its specific objections **within seven days** of Plaintiff's filing, and Plaintiff may respond to Defendant's objections **within five days**.

6. The Court will **ORDER** that: (1) the notice shall include information regarding opt-in plaintiffs' possible responsibility for costs; (2) the notice shall be sent only by mail and email; (3) Plaintiff may ask the Court for permission to send notice to particular potential opt-in plaintiffs by text message only if notice by both mail and email is returned as undeliverable; and (4) Plaintiff may not send any reminder notices.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**