# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

|  |  |
|---|---|
| **Kerry Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop, individually and on behalf of others similarly situated,** | **Civil Action No. 1:20-cv-251** |
| **Plaintiffs,** | **Honorable Curtis L Collier** |
| **v.** |  |
| **Unum Group Corporation,** | **Magistrate Judge Christopher H. Steger** |
| **Defendant.** |  |

### SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement" or "Settlement") is made and entered into by and among Class Representatives Kerry Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop ("Class Representatives" or "Plaintiffs") on behalf of themselves and the Settlement Class Members (defined below) they represent under Rule 23 of the Federal Rules of Civil Procedure ("FRCP') and 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), and Defendant Unum Group ("Defendant" or "Unum") (together with Plaintiffs, the "Parties").

### RECITALS

On September 1, 2020, Loomis filed her Complaint (Dkt. 1) (the "Complaint"), which she amended on November 29, 2021, to add Class Representatives Larensen, DePuydt, and Roop (Dkt. 133), alleging that Defendant violated the FLSA and 26 Me. Rev. Stat. Ann. §§ 661-73 ("Maine Law") by failing to pay them and all those similarly situated overtime compensation for all hours worked above 40 in a workweek due to alleged misclassification as exempt from the FLSA's and Maine Law's overtime protections ("the Litigation"). Defendant denies these allegations.

On May 31, 2021, the Court granted Plaintiffs' motion for conditional certification under the FLSA (Dkt. 96), and on May 4, 2023, the Court granted Plaintiffs' motion for class certification under Rule 23 of the FRCP of their Maine Law claims, and denied Defendant's motion to decertify the collective action. (Dkt. 264).

Thereafter, the Court stayed the case while Defendant sought permission to appeal the class certification decision under Rule 23(f). (Dkt. 266).

On December 18, 2023, the United States Court of Appeals for the Sixth Circuit denied Defendant's Rule 23(f) petition to appeal, and thereafter, the district court lifted the stay (Dkt. 274), and issued its decision denying both parties' motions for summary judgment on liability, concluding that fact issues require a jury to decide one prong of the administrative exemption: whether Plaintiffs exercise independent judgment and discretion with regard to matters of significance. (Dkt. 303, 304).

Thereafter, notice issued under FRCP Rule 23, and ten individuals opted-out of the Class. The Parties began class-wide damages discovery, with Defendant producing payroll records and log-on/log-off records, which both Parties' experts analyzed.

On July 2, 2024, the Court granted the Parties' motion to stay proceedings to permit the Parties to engage in mediation. (Dkt. 307). In connection with this mediation, counsel for the Parties exchanged information and data and engaged in good faith, in-person negotiations presided over by a highly regarded mediator with extensive experience in wage-and-hour law. On September 17, 2024, mediation ended with an agreement in principle and the core terms reduced to a term sheet signed by Plaintiffs' Counsel and Defendant's corporate representative. Since the September 17, 2024, mediation, the Parties have continued to work to narrow the issues, identify

2

areas of agreement, and have made additional concessions where appropriate, leading ultimately to this Agreement.

The Parties and their Counsel believe that the interests of all concerned are best served by compromise, settlement, and dismissal of the Litigation with prejudice and have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests and avoid the expense, delay, diversion, and risk of protracted and complex litigation.

## 1. DEFINITIONS

1.1. The term "Class Member" means all individuals belonging to the Rule 23 Class during the Class Period certified by the Court in its Opinion and Order dated May 4, 2023, (Dkt. 261), and who did not opt out during the notice period. Specifically, the Class includes the following individuals: Since September 1, 2014, all individuas who are or have been employed by Defendant in Maine as Disability Benefits Specialists ("DBS") and/or Life Event Specialists ("LES") who were charged with processing long-term disability claims ("LTD") and short-term disability claims ("STD") and were paid a salary and were classified as exempt from overtime pay. According to the data produced by Defendant, there are 919 Class Members who worked for one or more workweeks as DBSs and/or LESs between September 1, 2014, and December 23, 2023 (the "Class Period").

1.2. The term "FLSA Opt-in" means the 28 DBSs and/or LESs who submitted their written consent to become party plaintiffs in this case under 29 U.S.C. § 216(b) and processed either STD, LTD or IDI (individual disability insurance) claims and worked for Unum outside of Maine for one or more workweeks since March 22, 2018.

1.3.     The term "Settlement Class Member" includes all FLSA Opt-ins and all Class Members. There are a total of 947 Settlement Class Members, inclusive of the four Class Representatives.

1.4.     The term "Class Counsel" means the undersigned Plaintiffs' lawyers.

1.5.     The "Gross Settlement Fund" is Fourteen Million Eight Hundred Thousand Dollars and Zero Cents (**$14,800,000.00**), which is the maximum total amount Defendant shall be required to pay under the terms of this Settlement Agreement, except that Defendant will also pay its share of employer payroll taxes associated with payments to Settlement Class Members that are attributable to back wages.

1.6.     The "Released Parties" means Defendant, including its predecessors, successors, parents, subsidiaries, and affiliated entities, and as to each such entity its former and present officers, directors, agents, employees, attorneys, insurers, and benefit plans..

1.7.     "Released Claims" means any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, including attorneys' fees whether at common law, under statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member who has or might have, of any kind whatsoever, that relate to payment of wages or compensation by Defendant for hours worked through the date that the Court finally approves this Settlement.  The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims against Defendant for unpaid wages, minimum wages, overtime, late payment of wages, incomplete or inaccurate wage statements, or damages or relief of any kind including but not limited to the FLSA, Maine Law, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or

recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation (including liquidated damages, penalties, interest, costs, attorneys' fees, and expenses of the settlement administrator); (iii) any and all claims under or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100 *et seq*., to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not related to an alleged wage-and-hour violation; and (iv) any claim that payments made to any Settlement Class Member or any Service Award results in any credit or otherwise affects the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including the date that the Court finally approves this Agreement. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment and not related to the payment of minimum and overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state and local law, statutes and regulations. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims under 28 U.S.C. § 1332(d).

## 2.    NO ADMISSION OF LIABILITY; COMPROMISE ACKNOWLEDGEMENT

2.1.    The Parties agree that this Agreement is entered into solely as a compromise of disputed claims, and this Agreement is not, and is not to be construed as, an admission by either

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

Party of any liability whatsoever. Nor is it, and nor will it be construed as, an admission of any act or fact whatsoever, including any violation of federal, state, local, or common law, statute, ordinance, directive, regulation, or order. This Agreement, and any communications, papers, proceedings, or orders related to this Agreement, are settlement documents and shall be inadmissible in evidence in any proceeding, other than an action or proceeding to approve, interpret, or enforce this Agreement.

2.2.     The Parties have investigated the facts and law during this Litigation, including exchanging written discovery; taking the depositions of 27 Plaintiffs and FLSA Opt-ins and Defendant's representatives on multiple topics under FRCP Rule 30(b)(6) regarding job duties and unpaid overtime hours worked, among other topics relevant to this litigation; reviewing documents related to Defendant's policies and practices; analyzing emails and other documents related to the Settlement Class Members' job duties and decision-making authority; and analyzing Defendant's payroll and workstation log/on-log/off data.  The Parties have also analyzed applicable laws and the damages claimed by Plaintiffs and the Settlement Class Members. Relying on their fact investigations, analyses, and the law, the Parties have engaged in arm's-length settlement negotiations.

2.3.     Plaintiffs believe the claims asserted in the Litigation have merit. Plaintiffs, however, recognize the expense, burden, and lengthy delay in potential recovery that would be inherent in continuing this litigation through to its conclusion, including, for example, completion of prolonged class-wide damages discovery, expert discovery, vigorous motions practice (concerning, *inter alia*, the amount of liquidated damages under Maine Law, the rate at which overtime should be calculated, trial issues to be resolved by motions *in limine*, and any successive attempts by Defendant to decertify the Rule 23 Class and/or FLSA collective following additional

discovery and/or trial), the difficulties in proving damages on a class-wide basis, preparing for and presenting Plaintiffs' case at trial, and possible appeals. Plaintiffs have also considered the uncertain outcome and the risk present in any litigation, as well as the aforementioned delays inherent in such litigation and the likelihood of protracted appellate review. Plaintiffs and their Counsel believe that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interests of the Settlement Class Members.

2.4.     Defendant maintains that it has complied with its obligations under the FLSA and Maine Law, or other similar state and local law, statutes and regulations, and believes Plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail. Defendant has vigorously contested the claims, but Defendant has considered the uncertainty and risks inherent in any litigation and believes that further litigation would likely be protracted, expensive, and contrary to its best interests. Substantial amounts of time, energy, and other resources have been committed, and absent settlement will continue to be committed, to Defendant's defenses against the claims asserted in this Litigation. Considering these factors, Defendant believes that settlement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures.

2.5.     The settlement will not be considered a concession or admission by Defendant of any violation of federal, state, or local law, statute, regulation, rule or order or any obligation or duty at law or in equity.

2.6.     Nothing in this Agreement will be deemed a concession or admission by any Party as to the amount of time the Settlement Class Members worked, including any amount of time in excess of 40 hours in a workweek.

2.7.    Class Counsel, after consultation with the Class Representatives, have independently determined that settlement and dismissal of the claims asserted in this Litigation are proper under the circumstances of this action and the terms of this Agreement.

2.8.    This Agreement contains all the agreements between the Parties and their respective counsel relating to this settlement of the Litigation.  There are no undisclosed side agreements between the Parties or their counsel.  At all times, the negotiations leading to the Agreement were adversarial, non-collusive, and at arm's-length.

**3.      TIMELINE FOR SETTLEMENT**

3.1.    The Parties contemplate the following timeline of settlement events:

a.      Within fourteen (14) calendar days of the execution of this Agreement by all Parties, the Parties will jointly submit a Motion for Preliminary Approval of FLSA and Class Action Settlement as set forth in Paragraph 5.1 of this Agreement.  The date on which the Court issues an order granting such motion is referred to herein as the "Preliminary Approval Date."

b.      Within five (5) business days of the date that the Parties execute this Agreement, Defendant will provide the Settlement Class List to the Settlement Administrator, as set forth in Paragraph 4.2 of this Agreement, and Class Counsel will provide the Settlement Administrator with each Settlement Class Member's tentative settlement allocation in accordance with Paragraphs 11.8 and 11.9.

c.      Within seven (7) calendar days of the Preliminary Approval Date, the Settlement Administrator will distribute the Notices (**Exhibits A and B**), as set forth in Paragraph 6.1 of this Agreement.  The date on which the Settlement Administrator distributes the Notice is referred to herein as the "Notice Distribution Date."

d.      Settlement Class Members, exclusive of the Class Representatives, shall have sixty (60) calendar days from the Notice Distribution Date to object to the Settlement, or dispute their point allocation, as set forth in Paragraphs 8.1, and 11.9 of this Agreement. This deadline is referred to herein as the "Response Deadline." Settlement Class Members who are current Unum employees must complete and return the Job Duties Affirmation Form (attached as **Exhibit C**) and discussed in Paragraph 7 below no later than the Response Deadline to receive their Settlement Allocation.

e.      No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, as set forth in Paragraphs 9.1 and 9.4 of this Agreement.

f.      No later than seven (7) calendar days before the final approval hearing, or by such other date set by the Court, Class Counsel shall file a Joint Motion for Final Approval of Settlement and Stipulation of Dismissal as set forth in Paragraph 9.2 of this Agreement.  The Court's order granting such motion is referred to herein as the "Final Approval Order," and the date such order is issued by the Court is referred to herein as the "Final Approval Date."

g.      Within five (5) calendar days after the Final Approval Date, the Settlement Administrator shall provide the Settlement Administrator Report as defined and set forth in Paragraph 10.3 of this Agreement.

h.      The "Effective Date" shall be the date on which the Final Approval Order is no longer appealable, or, if an appeal is filed, the date on which such appeal is final.

i.      Within seven (7) calendar days of the Effective Date, Defendant will deposit the Gross Settlement Fund, plus the employer's share of applicable payroll taxes, into the Qualified Settlement Fund ("QSF"), as set forth in Paragraph 10.5 of this Agreement.

j.      Within ten (10) calendar days after Defendant fully funds the QSF, the Settlement Administrator shall mail the Settlement Payments and Service Awards (as applicable) to Settlement Class Members as set forth in Paragraph 12.1 of this Agreement and shall provide Class Counsel their Attorneys' Fees and Litigation Expenses as set forth in the Final Approval Order.

k.      The deadline for Settlement Class Members to cash Settlement Payments and the Service Award will be one hundred twenty (120) days from the date such Settlement Payments and the Service Award are issued by the Settlement Administrator.  This one hundred twenty (120) day period shall be called the "Cashing Period." During the Cashing Period, the Settlement Administrator shall reissue Settlement Payments and Service Awards at the request of any Settlement Class Member and provide the Parties, upon request, a list of all Settlement Class Members who have not cashed their Settlement Payments and the Service Award.

l.      Within sixty (60) calendar days after the end of the Cashing Period, the Settlement Administrator shall remit funds remaining from any uncashed Settlement Payments and Service Awards to the unclaimed property fund in the state in which the Class Member currently lives, according to the Settlement Administrator's records at the time of any such remittance, and notify such Class Member by email and First Class U.S. mail. Any Class Member who obtains such funds from the unclaimed property fund of a state will be deemed bound by the release provisions of this Agreement.

## 4.      APPOINTMENT OF SETTLEMENT ADMINISTRATOR

4.1.    The Parties agree that, subject to the approval of the Court, the Parties will retain the firm of Rust Consulting Services, Inc. ("Rust" or "Administrator") to act as the independent Settlement Administrator, provide the Notice, and where appropriate the Job Duties Affirmation

Form, to Settlement Class Members, provide required notices under the Class Action Fairness Act (the "CAFA Notice") within five (5) calendar days of the Preliminary Approval Date, open and manage a Qualified Settlement Fund under Section 468B of the IRC and Treas. Reg. § 1.468B-1 *et seq.*, distribute Settlement Payments and the Service Award, and perform other tasks consistent with the orders of the Court or this Agreement. Defendant will be consulted by Class Counsel and/or the Settlement Administrator with respect to any issues that arise regarding settlement administration, and the Parties agree to work together in good faith to resolve such issues. The Settlement Administrator will be paid for all Settlement Administration Costs out of the Gross Settlement Fund described in Paragraphs 10.4.4 and 11.3. The "Settlement Administration Costs" will not exceed $15,523.00 and shall be inclusive of the Settlement Administrator's fee and costs necessary to administer the Agreement.

4.2.    No later than 5 business days after the Parties execute this Agreement (see 3.1(b)), Defendant will provide the Settlement Administrator with the following information for each Settlement Class Member: (i) name; (ii) best known mailing address; (iii) best known telephone number(s); (iv) best known email address(es); (v) whether the Settlement Class Member is a current employee; (vi) Social Security Number, (vi) most current State where employee worked; and (vii) Employee ID number  (the "Settlement Class List").

4.3.    The actions of the Settlement Administrator shall be governed by the terms of the Agreement. Class Counsel and Defendant's counsel may provide relevant information and guidance as needed by the Settlement Administrator in the performance of its duties and may engage in related communications with the Settlement Administrator.

## 5.    PRELIMINARY COURT APPROVAL OF SETTLEMENT

5.1.    No later than fourteen (14) calendar days after execution of this Settlement Agreement (Paragraph 3.1(a) above), the Parties will jointly submit this Agreement to the Court with an appropriate Motion for Preliminary Approval of FLSA and Class Action Settlement. In such motion, the Parties will request that the Court enter an order: (1) preliminarily approving the settlement reached by the Parties in this action as embodied in this Agreement; (2) approving the proposed settlement Notices attached hereto as **Exhibits A and B**; (3) appointing Rust as the Settlement Administrator; and (4) setting a Final Approval and Fairness Hearing ("Fairness Hearing") approximately ninety-five (95)  days after the Preliminary Approval Date  on the question of whether the Settlement, including without limitation, payment of Attorneys' Fees, Litigation Expenses, and the Service Awards, should be finally approved as fair and reasonable.

5.2.    If the Court denies the Preliminary Approval Motion for reasons that cannot be addressed without changes to the Settlement Agreement, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, this Settlement Agreement will be null and void, and the Litigation will resume as if no settlement had been attempted.

## 6.    DISTRIBUTION OF APPROVED CLASS SETTLEMENT NOTICES

6.1.    Within seven (7) calendar days after the Preliminary Approval Date (Paragraph 3.1(c) above), the Settlement Administrator will mail the Notice of Overtime Pay Class Action Settlement to Current Unum Employees to the 224 Settlement Class Members who still work for Unum and will, mail the Notice of Overtime Pay Class Action Settlement to Former Unum Employees to the 723 Settlement Class Members who no longer work for Unum ( Exhibits A and B, "Notices").  Before mailing the Notices, the Settlement Administrator will run the mailing

addresses from the Settlement Class List through the National Change of Address ("NCOA") database of the United States Post Office.

6.2.     The Settlement Administrator will conduct an address trace on all Settlement Class Members whose Notice is returned undeliverable and will resend the Notice to all updated addresses obtained through the trace.  Unless a Notice is returned to the Settlement Administrator by the U.S. Postal Service as undeliverable, each Notice shall be deemed mailed and received by the Settlement Class Member to whom it was sent seven (7) days after mailing.

6.3.     For each of the 224 Settlement Class Members who are current Unum employees, the Notice (Exhibit B)  will be sent with the Affirmation of Job Duties Form (Exhibit C).

## 7.    AFFIRMATION OF JOB DUTIES FORM

7.1.     Current Unum employees who are Settlement Class Members must sign and return the Affirmation of Job Duties Form attached as Exhibit C by the Response Deadline to receive their share of the Gross Settlement Fund.

7.2.     Any current Unum employee who is a Settlement Class Member who does not sign and return the Affirmation of Job Duties Form by the Response Deadline will not receive any monies from the Gross Settlement Fund and will not be subject to the Release set forth in Paragraph 1.7.

7.3.     The Administrator shall retain copies of all Affirmation of Job Duties Forms returned by Settlement Class Members and provide them to Defendant and Class Counsel within three (3) business days of receipt. The Administrator shall send a Reminder Notice to current Unum employees who are Settlement Class Members who have not returned their Affirmation of Job Duties Form 30 days after the Notice is mailed. The Administrator shall serve a final list of all

Settlement Class Members who signed an Affirmation of Job Duties Form to the Parties within three (3) business days after the Response Deadline.

7.4.     Any Settlement Class Member who is a current Unum employee who does not submit a timely Affirmation of Job Duties Form shall not: (i) be bound by any orders or judgments entered in this Litigation; (ii) be entitled to benefits or relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be subject to the Release set forth in Paragraph 1.7.

7.5.     Class Counsel will calculate the gross amount of the settlement awards allocated to current Unum employees who do not sign and return the Affirmation of Job Duties Form. All unclaimed individual settlement amounts that equal $16,000.00 or less shall be summed and reallocated to the Settlement Class Members participating in the Settlement on a pro rata basis. Any unclaimed individual settlement amounts in excess of $16,000.00 will be summed and retained by the Defendant.

## 8.     OBJECTIONS TO SETTLEMENT

8.1.     To object to the Agreement, a Settlement Class Member must file with the U.S. District Court for the Eastern District of Tennessee a written objection to the Settlement postmarked by the Response Deadline, and, if the Settlement Class Member intends to appear at the Fairness Hearing, a written notice of their intention to appear, with copies to the Administrator postmarked no later than the Response Deadline.  The statement submitted ("Objection Statement") must set forth in clear and concise terms the legal and factual arguments supporting the objection.  Any reasons not included in the Objection Statement will not be considered. The Objection Statement must also include the name, address, email, and telephone number for the individual making the objection.  The Administrator will provide the Parties with copies of each Objection Statement by email within one (1) business day of receipt. Class Counsel will file the

originals of all Objection Statements with the Court within five (5) business days after the Response Deadline.

      8.2.    An individual who files objections to the Settlement in accordance with Paragraph 8.1 ("Objector") by submitting an Objection Statement has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. As described above in Paragraph 8.1, Objectors who wish to appear at the Fairness Hearing must state their intention to do so in writing at the time they submit their Objection Statement. Objectors may withdraw their objections at any time. Objectors may not present an objection at the Fairness Hearing based on a reason not stated in their written Objection Statement.

      8.3.    The Parties may file with the Court written responses to any filed Objection Statements no later than three (3) business days before the Fairness Hearing.

      8.4.    At no time shall either Party or their Counsel seek to solicit or otherwise encourage Settlement Class Members to submit written objections to the Settlement or to appeal the Court's final judgment.

      8.5.    Any Objector whose objection is overruled will be paid their allocation under the Settlement and will be bound by the settlement terms except that any Objector who is a current employee and who did not sign the Job Duties Affirmation Form will not be bound by the settlement terms,

      8.6.    Individuals who fail to timely object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the Settlement, whether by appeal or otherwise.

## 9.     FINAL APPROVAL AND FAIRNESS HEARING

9.1.     No later than seven (7) calendar days prior to the Fairness Hearing, or such other date set by Court (Paragraph 3.1(e)), Class Counsel will file a Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

9.2.     No later than seven (7) calendar days prior to the Fairness Hearing, or such other date set by Court (Paragraph 3.1(f)), the Parties will jointly submit to the Court a memorandum of law in support of a Motion for Final Approval of Settlement and Stipulation of Dismissal ("Final Approval Motion"). Class Counsel will draft the Final Approval Motion and supporting memorandum and will submit it to Defendant for review and editing no later than three (3) business days prior to the deadline for submission to the Court.

9.3.     In the Final Approval Motion, the Parties will request that the Court, among other things: (1) state that there is a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, overtime compensation, or statutory damages; (2) approve the Agreement, including all information contained in the Notices, as fair, reasonable, adequate, and binding on Plaintiffs and all Settlement Class Members who are participating in the settlement; (3) approve the procedure for Defendant to pay the Gross Settlement Fund into the QSF as described in Paragraph 10.5; (4) order Administration of the QSF as described in Paragraphs 10–13; (5) approve the release of claims set forth in this Agreement; (6) order the dismissal with prejudice of the claims of Plaintiffs and all Settlement Class Members who are participating in the settlement; (7) order entry of a Stipulation of Dismissal in accordance with this Agreement; (8) approve the Attorneys' Fees and Litigation Expenses set forth in Paragraph 10.4, 11.2, and 11.4; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this

Agreement, including, but not limited to, enjoining any pursuit of claims covered by the release approved by the Court.

9.4. Class Counsel will seek an award of Attorneys' Fees of $4,933,333.33 ("Attorneys' Fees"), which equals thirty-three and one third percent (33 1/3 %) of the Gross Settlement Fund. These Attorneys' Fees shall be paid from the Gross Settlement Fund as defined in Paragraph 10.4. In addition, Class Counsel will be reimbursed $164,638.32 for out-of-pocket expenses ("Litigation Expenses") from the Gross Settlement Fund. The Settlement Administration Costs will also come out of the Gross Settlement Fund in an amount not to exceed $15,523.00.

9.5. If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Parties will resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying final approval; or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement. If the Court approves an award of Attorneys' Fees, Litigation Expenses, or Service Awards in an amount less that that specified in this Agreement, the additional funds resulting from the reduction will be distributed to the Settlement Class Members and will not revert to Defendant. This Agreement will remain in effect.

9.6. If this Agreement does not become final and the Notice has already been sent to Settlement Class Members, the Administrator will provide notice to the Settlement Class Members, in a form jointly agreed upon by the Parties, that the Agreement did not receive final approval and that no Settlement Payments will be made under the Agreement. Such notice shall be mailed by the Administrator via First Class U.S. Mail, postage prepaid, to the addresses used by the Administrator in mailing the Notice. The costs of such mailing) shall be split equally between Class Counsel and Defendant.

9.7.     In the event the Final Approval Order is consistent with the terms and conditions of this Agreement in all material respects, the Settlement Class Members, Class Counsel, and Defendant all hereby waive any and all rights to appeal the Final Approval Order.  The waiver in the preceding sentence does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

9.8.     Plaintiffs and Class Counsel understand and agree that any fee payments made under Paragraph 10.4 will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Plaintiffs and Settlement Class Members or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of this Litigation.  As an inducement to Defendant to enter into this Agreement, and as a material condition thereof, Plaintiffs and Class Counsel hereby, as of the Effective Date of this Agreement, irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against the Released Parties for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Paragraph 9.   As a further inducement to Defendant to enter into this Agreement, and as a material condition thereof, Plaintiffs and Class Counsel further understand and agree that the fee and cost payments made under Paragraphs 10.4, 11.2, and 11.4 will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted, or discharged under this Paragraph, and warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees or costs, including but not limited to, bills of costs or requests for attorneys' fees, for any fees and/or costs arising out of the Litigation, and Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge Defendant of any liability for such fees and/or costs.

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

## 10.    QUALIFIED SETTLEMENT FUND

10.1.    Defendant and the Administrator will cause to be established and maintained a Qualified Settlement Fund ("QSF"), the "*Loomis* Qualified Settlement Fund."  The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under § 468B of the Internal Revenue Code ("Code") and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1 *et seq*., and will be administered by the Administrator in accordance with the terms of this Agreement and in such a manner as to qualify and maintain the qualifications of the QSF under the aforementioned Code sections.  The monies to establish, to maintain, and to fund the QSF will be part of the Settlement Administrative Cost which will come exclusively from the Gross Settlement Fund provided for in Paragraph 10.4.

10.2.    The Administrator will apply for the employer identification number required for the QSF and will provide that number to Defendant within two (2) weeks after receiving it.  The Administrator will comply with all applicable tax filings, withholdings, payments, and reporting requirements of the QSF, including those required by the Code and applicable regulations thereunder.  The Administrator will timely inform Defendant of any federal or state tax payments associated with or arising out of payments made by the QSF, although the Settlement Administrator shall be the one to make such payments as specified in Paragraphs 13.1 and 13.2.

10.3.    Within five (5) calendar days after the Final Approval Date (Paragraph 3.1(g)), the Settlement Administrator will tender a report (the "Settlement Administrator Report") to Class Counsel and Defendant's Counsel containing the following information: (1) the gross Settlement Payment to each Settlement Class Member, before deduction of the Settlement Class Member's share of taxes and withholding; (2) the amount of the Settlement Payment attributed to wages; (3) the amount of the Settlement Payment attributed to liquidated damages, and non-wage recovery; (4) the net Settlement Payment to the Settlement Class Member, after deduction of the Settlement

Class Member's share of taxes and withholding; and (5) the amount of the Defendant's portion of the payroll taxes on the Settlement Payments to be paid by Defendant to the Administrator who shall remit such taxes to the appropriate taxing authorities on behalf of Defendant. The Administrator will further include in the Report: (a) the sum of the gross amount of all Settlement Payments; (b) the gross amount of the Defendant's portion of payroll taxes on all Settlement Payments; and (c) the total Settlement Administration Costs. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendant agrees to reasonably cooperate with the Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Paragraph.

10.4.    The following Gross Settlement Fund, calculated in accordance with the terms of this Agreement and paid in Settlement of the Litigation, is $14,800,000.00 and comprises the following:

10.4.1. Court-approved Settlement Payments to Settlement Class Members;

10.4.2. Attorneys' Fees and Litigation Expenses of Class Counsel as awarded by the Court;

10.4.3. Service Awards to Plaintiffs, as awarded by the Court;

10.4.4. Settlement Administration Costs (capped at $15,523.00); and

10.4.5. Taxes that are withheld and tendered by the Settlement Administrator on behalf of the Settlement Class Members with respect to any Settlement Payments.

10.5.    Within seven (7) calendar days of the Effective Date of the Agreement (Paragraph 3.1(i)), Defendant will send the Gross Settlement Fund, plus the employer's share of applicable payroll taxes, to the Settlement Administrator for deposit into the QSF. As transferor of the funds to be deposited in the QSF, Defendant will prepare and file the information statements concerning

its payments to the QSF as required to be provided to the IRS under Code § 468B and applicable regulations. Defendant will be responsible for paying its share of employer payroll taxes. The employer payroll taxes will not come out of the Gross Settlement Fund deposited in the QSF.

10.6.    The Settlement Administrator shall have full responsibility for all distributions from the QSF. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall not have any obligation or liability regarding distributions from the QSF to any Settlement Class Member. Any person who does not receive a Settlement Payment will have no recourse against Defendant, Defendant's Counsel, Plaintiffs, or Class Counsel for failure to receive any payment due under this Agreement.

10.7.    The Parties shall have the right to inspect the records of the QSF, including but not limited to, imaged copies of the front and back of endorsed checks, and any correspondence between the Settlement Administrator and Class Members relating to disputes over payments.

10.8.    The QSF will terminate twelve (12) months after the Settlement Administrator initially mails the Settlement Checks to Class Members.

**11.    DISTRIBUTION OF GROSS SETTLEMENT FUND**

11.1.    The Parties agree that the Gross Settlement Fund will be distributed as set forth in this Paragraph (Paragraph 11).

11.2.    Class Counsel will be reimbursed for the Expenses of Litigation in an amount not to exceed $164,638.32.

11.3.    The Settlement Administrator will be paid Settlement Administration Costs in an amount not to exceed $15,523.00.

11.4.    Class Counsel will receive an award of Attorneys' Fees subject to Court approval of $4,933,333.33 in accordance with the Court's Final Approval Order.

11.5.    Subject to Court approval, the Parties agree that up to $45,000.00 of the Gross Settlement Fund will be paid as "Service Awards," with $15,000.00 paid to named plaintiff Kerry Ann Loomis, and $10,000.00 each paid to Lisa Larensen, Jessica DePuydt, and Chris Roop in recognition to their service to the Settlement Class Members, including but not limited to sitting for their full-length depositions and attending the 12-hour mediation virtually.

11.6.    The Attorneys' Fees and Litigation Expenses set forth in Paragraphs 11.2 and 11.4 shall be distributed by the Settlement Administrator to Class Counsel per instructions to be provided to the Settlement Administrator within five (5) business days after the Defendant funds the QSF.

11.7.    After the amounts described in Paragraphs 11.2, 11.3, 11.4, and 11.5 are deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Settlement Class Members.

11.8.    Because it is impossible to know which claims would have been successful, if any, how much unpaid overtime would have been awarded each week on a class-wide basis, and/or whether a full compensatory award of liquidated damages would have been owed, the settlement payment amounts to be paid from the Net Settlement Fund are based on each Settlement Class Member's number of weeks of employment as an exempt DBS and/or LES ("Covered Position").Settlement Class Members who are part of the Maine Class will be credited with one (1) point for each week they worked in a Covered Position from September 1, 2014, to September 17, 2024.  Settlement Class Members who are FLSA Opt-ins outside of Maine will be credited with one (1) point for each week they worked in a Covered Position from March 22, 2018, through September 17, 2024.  The total amount of the Net Settlement Fund will then be divided by the total number of points (across all Settlement Class Members) to determine the value of a point.  The

Settlement Payment to Settlement Class Members will equal their number of points multiplied by the value of a point. Fifty percent (50%) of each such Settlement Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages.

11.9.   The Net Settlement Fund will be allocated to Settlement Class Members, as calculated by Class Counsel in the manner described in Paragraphs 11.8. The tentative Settlement Payment amounts to Settlement Class Members were provided to Defendant's counsel on October 15, 2024 (the "Settlement Distribution Data"). The amounts are tentative only in that (1) if any Settlement Class Member presents a valid and timely dispute postmarked by the Response Deadline, with supporting documentation, that his/her employment dates in Covered Position are incorrect, then the value of a point as discussed in Paragraph 11.8 will be adjusted; and (2) in the event that a Settlement Class Member who is a current employee chooses not to sign the Job Duties Affirmation Form and that current employee's allocated settlement amount is equal to or less than $16,000.00, the funds that would have been allocated to that current employee will be distributed to the Settlement Class Members participating in the Settlement. These contingencies will impact the Settlement Distribution Data but will not impact the amount of the Gross or Net Settlement Fund, except that if the funds that would have been allocated to current employees who choose not to participate in the Settlement are in excess of $16,000.00 per Settlement Class Member, those funds will revert to Unum, while such individual settlement payments equal to or less than $16,000.00 will remain in the Net Settlement Fund, to be distributed on a pro rata basis among those Settlement Class Members participating in the settlement.

11.10.  The Administrator shall provide Class Counsel with any valid disputes regarding the number of weeks a Settlement Class Member worked in a Covered Position immediately, and no later than three (3) days after receiving such dispute, and Class Counsel, will in turn, provide

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

Defendant's Counsel and the Administrator with the final listing of Settlement Distribution Data within seven (7) calendar days after the Response Deadline.

11.11. All Settlement Payments will be paid by check. All Settlement Class shall have printed, on the back of their check, the following endorsement:

> *CONSENT TO JOIN AND RELEASE OF CLAIMS:*
> By endorsing my signature on and negotiating this check, I have either already opted in or now consent to join the Fair Labor Standards Act claims in the case *Loomis, et al. v. Unum,* Case No. 1:20-cv-251 (E.D. Tenn.), and I agree to be bound by the Settlement Agreement and release of all federal and state wage claims described in the Release..

## 12. DISTRIBUTION OF SETTLEMENT CHECKS TO CLASS MEMBERS

12.1. Within ten (10) calendar days after the Defendant fully funds the QSF, the Administrator will distribute Settlement Payments to the Settlement Class Members representing: (1) the backpay due as set forth in the Settlement Distribution Data less all applicable withholding taxes and deductions; (2) the amount of liquidated damages due under the Agreement as set forth in the Settlement Distribution Data; and (3) any Service Award owed.  The Settlement Payments will state that they are valid for one hundred twenty eighty (120) days.  In addition, the Settlement Administrator will issue an IRS Form 1099-MISC, completing box 3 ("Other income"), for each Class Member, showing the amount of liquidated damages and Service Award paid (if any), and an IRS Form W-2 showing the amount of backpay in the year it was paid.

12.2. Other than the withholding and reporting requirements stated in this Paragraph, Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received under this Settlement.

12.3. If any funds from the Net Settlement Fund are not cashed by the Settlement Class Members within the Cashing Period, those amounts will be remitted to the unclaimed property fund in the state in which the Settlement Class Member lives, and the Settlement Administrator

shall notify such Settlement Class Member by First Class U.S. Mail. The Administrator shall provide Class Counsel and Defendant a list of all uncashed checks thirty (30) days before the end of the Cashing Period or at such other times as requested by Class Counsel or Defendant.

## 13.     TAXES

13.1.    It is each Settlement Class Member's ultimate obligation to pay the employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income.  The Parties also agree that there must be proper withholding of federal, state, and local income taxes (with the state and local withholdings based on each Class Member's current state of residence), and the employees' share of FICA and Medicare on all settlement payments representing back wages.  The Administrator will be responsible for calculating, withholding, and depositing or remitting the required amounts for federal, state, and local income taxes on all payments representing back wages, and the employees' share of FICA and Medicare.  The Administrator will be responsible for preparing and distributing all appropriate tax forms associated with payments made by the Administrator, including, as appropriate, Form W-2 and Miscellaneous and/or interest Income Form 1099.

13.2.    The Administrator will be responsible for calculating and paying applicable FUTA, SUTA, and the employer's share of FICA and Medicare on all Settlement Payments representing back wages and will remit those payments to the appropriate taxing authorities and will give Defendant reasonable notice of such payments.  The Defendant will be responsible for funding the QSF to pay the employer's share of all payroll taxes as described in Paragraphs 10.3 and 11.5 above.  Within two (2) business days after the Final Approval Date, the Administrator will inform the Parties of its calculations, the amount of withholding, and the amounts to be deposited and paid, in advance of any submission to government authorities or distributions to Settlement Class

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

Members. The Parties will have seven (7) business days to provide written notice to the Administrator that they agree with the calculations or to provide corrected calculations. If no such notice or calculations are provided by the Parties, the Settlement Administrator may proceed with distribution on the assumption that its underlying calculations are correct.

13.3. The Settlement Administrator shall provide the Parties with a copy of any communications sent to Settlement Class Members.

13.4. In no event shall any Settlement Payment to a Settlement Class Member or any Service Award create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Service Award be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

## 14. RELEASE BY SETTLEMENT CLASS MEMBERS

14.1. Upon the Final Approval Date, Plaintiffs, and all Settlement Class Members other than those who are current employees who choose not to participate in the Settlement by refusing to sign the Job Duties Affirmation Form, on behalf of themselves and each of their heirs, representatives, successors, assigns and attorneys, shall be deemed to release and forever discharge all Released Claims of whatever nature against the Released Parties. These Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims. But on the Final Approval Date, Plaintiffs and Settlement Class Members, including all current employees who

sign the Affirmation of Job Duties Form, shall be deemed to have, and by operation of the Final Approval Order dismissing the Litigation with prejudice, shall have fully, finally, and forever settled and released any and all of the Released Claims without regard to the subsequent discovery or existence of such different or additional facts.

14.2.    The Plaintiffs and Settlement Class Members other than those current employees who do not sign the Job Duties Affirmation Form, forever agree that they shall not institute any action seeking, nor accept, back pay, overtime premiums, penalties, liquidated damages, punitive damages, interest, penalties of any nature, attorneys' fees and costs, or any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against the Released Parties, for any period through the Final Approval Date, arising from any claims released in this Paragraph 14.  This release shall be effective as of this Agreement's Effective Date.

## 15.    DISMISSAL OF ACTION

15.1.    Plaintiffs agree to dismissal of the Litigation with prejudice upon satisfaction of the conditions and timeline specified herein that result in the Court's entry of an order granting the Parties' Joint Motion for Final Approval of Settlement.

## 16.    RESOLUTION OF FUTURE DISPUTES

16.1.    The United States District Court for the Eastern District of Tennessee will have continuing jurisdiction to interpret and enforce this Agreement and to hear and  adjudicate any dispute or litigation arising from the Agreement except as otherwise provided herein.

## 17.    DOCUMENTS

17.1.    Counsel for the Parties will, three hundred sixty-five (365) days after the Administrator mails the Settlement Payments to the Settlement Class Members, destroy or return

to counsel for the producing party all documents and information (including electronically stored information) produced by the other Party or Parties during the course of the Litigation. This obligation supersedes any obligation, right, or timing otherwise provided for by Court or Local Rule. This Paragraph does not apply to publicly filed material or attorney work product. Moreover, the Parties agree to uphold their duties and responsibilities under the parties' Stipulated Protective Order (Dkt. 140) and agree to be bound by the terms and conditions of the order following the dismissal of the Action.

## 18. PRESS RELEASES

18.1. The Parties and their Counsel will not issue a press release regarding this Settlement. After the Parties file their Motion for Preliminary Approval, they may respond to any press inquiries to confirm the terms of the Settlement. Nothing in this Agreement prevents the law firms representing the Parties from posting about this Settlement on their law firms' websites or social media accounts following Preliminary Approval of the Settlement

## 19. PARTIES' AUTHORITY

19.1. The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to its terms and conditions, which the Parties agree are the result of lengthy, intensive, and arm's length negotiations.

19.2. The Parties acknowledge that, throughout the settlement negotiations that resulted in this Agreement, they have been represented by counsel who are experienced in FLSA and class action litigation of state law wage-and-hour claims, like the Litigation here, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

19.3.    Upon approval by the Court, this Agreement shall bind Plaintiffs and all Settlement Class Members, except those current employees who choose not to sign the Job Duties Affirmation Form, to all terms set forth in this Agreement.

19.4.    The Notices, in the form attached hereto as Exhibits A and B, will advise all Settlement Class Members of the binding nature of the release of claims described in this Agreement (see Paragraph 14), and that the release will have the same force and effect upon every Settlement Class Member as if the Agreement were executed by each Settlement Class Member, except those current employees who chose not to sign the Job Duties Affirmation Form who shall not be subject to any release.

## 20.    MUTUAL FULL COOPERATION

20.1.    The Parties agree to cooperate fully to implement this Agreement, including but not limited to, executing such documents and taking such other action as is reasonably necessary to implement and effectuate the terms of this Agreement.

## 21.    ENFORCEMENT ACTIONS

21.1.    If any Party or Settlement Class Member institutes any legal action, arbitration, or other proceeding other than mediation against any other Party or Settlement Class Member to enforce the provisions of this Agreement, the prevailing Party will be entitled to recover from the non-prevailing Party or Settlement Class Member reasonable attorneys' fees and costs.

## 22.    MODIFICATION

22.1.    This Agreement and its Exhibits may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## 23. ENTIRE AGREEMENT

23.1. This Agreement and its Exhibits and the final Settlement Distribution Data constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representation or terms will modify, vary, or contradict the terms of this Agreement.

## 24. CHOICE OF LAW/JURISDICTION

24.1. This Agreement will be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Tennessee, both in its procedural and substantive aspects, and the continuing jurisdiction of the United States District Court for the Eastern District of Tennessee. This Agreement will be construed as a whole, according to its fair meaning and intent and not in favor of any Party, regardless of who drafted or was principally responsible for drafting the Agreement or any specific term or condition thereof.

## 25. COUNTERPARTS

25.1. This Agreement may be executed in counterparts, and via electronic signature, and when Defendant and Plaintiffs have executed at least one counterpart, each counterpart will be deemed an original, and when taken together, will constitute one Agreement, which will be binding upon and effective as to all Parties.

## 26. NO PRIOR ASSIGNMENTS; BINDING ON ASSIGNS

26.1. The Parties represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged in this Agreement.

26.2.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

## 27.    VOIDING THE AGREEMENT

27.1.    If this Agreement, or any amended version agreed upon by the Parties, is not approved by the Court, the Agreement will be null and void in its entirety and the Parties will revert to their respective positions prior to the Agreement, unless expressly agreed in writing by all Parties.

27.2.    If judicial approval of the Agreement is otherwise denied, the Parties agree in good faith to negotiate about appropriate revisions to such provisions rejected by the Court for a period not less than forty-five (45) calendar days following the date approval is denied, and to re-submit for the Court's approval.  The Parties will file a joint motion for a stay of the action during the period referred to in this Paragraph.

31

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

| | |
|---|---|
| By: /s/ Molly A. Elkin | By: /s/ Patrick W. Shea (with email authority) |
| Molly A. Elkin (*pro hac vice*) | Patrick W. Shea (*pro hac vice*) |
| John W. Stewart (*pro hac vice*) | Kaveh Dabashi (Pro Hac Vice) |
| McGILLIVARY STEELE & ELKIN LLP | PAUL HASTINGS LLP |
| 1101 Vermont Avenue NW, Suite 1000 | patrickshea@paulhastings.com |
| Washington, DC 20005 | kavehdabashi@paulhastings.com |
| Telephone: (202) 833-8855 | 200 Park Avenue |
| mae@mselaborlaw.com | New York, New York 10166 |
| jws@mselaborlaw.com | Phone: (212) 318-6000 |
| | Fax: (212) 319-4090 |
| Melody Fowler-Green (*pro hac vice*) | |
| N. Chase Teeples (*pro hac vice*) | Charles B. Lee |
| YEZBAK LAW OFFICES PLLC | MILLER & MARTIN PLLC |
| 2021 Richard Jones Road, Suite 310A | chuck.lee@millermartin.com |
| Nashville, TN 37215 | Volunteer Building Suite 1200 |
| Telephone: (615) 250-2000 | 832 Georgia Avenue |
| Facsimile: (615) 250-2020 | Chattanooga, Tennessee 37402-2289 |
| mel@yezbaklaw.com | Phone: (423) 756-6600 |
| teeples@yezbaklaw.com | Fax: (423) 785-8480 |
| | |
| *Plaintiffs' and Class Counsel* | *Attorneys for Defendant Unum Group Corporation* |

Date: 10/22/2024

Kerry Ann Loomis
Named Plaintiff

Date: 10/23/2024

Date: 10/23/2024

Brent Williams
Unum Group Corporation

Date: 10/23/2024

Lisa Larensen
Named Plaintiff

Date: _____ 10/23/2024 _____

Jessica DePuydt
Named Plaintiff

Date: _____ 10/23/2024 _____

Chris Koop
Named Plaintiff

Date: _____ 10/23/2024 _____

33

# EXHIBIT A

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

[NAME]
[ADDRESS]
[CITY, STATE ZIP]
[Ref. No. ]
[SSN]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | |
|---|---|
| **Kerry Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop, individually and on behalf of others similarly situated,** | **Civil Action No. 1:20-cv-251** |
| **Plaintiffs,** | **Honorable Curtis L Collier** |
| **v.** | |
| **Unum Group Corporation,** | **Magistrate Judge Christopher H. Steger** |
| **Defendant.** | |

# NOTICE OF OVERTIME PAY CLASS ACTION SETTLEMENT FOR FORMER UNUM EMPLOYEES

**You are entitled to a payment in the amount of $X (as explained in Section 6 below) from a class action lawsuit.**

*A federal court has authorized this notice.  This is not a solicitation from a lawyer.*

The purpose of this Notice is to: (1) inform you about a Settlement in an overtime lawsuit that includes a "collective action" under the Fair Labor Standards Act ("FLSA") and a "Class Action" under Maine Law ("Lawsuit") against Unum Group Corporation ("Unum" or "Defendant") in which you are a Class Member and/or a member of the FLSA collective; (2) provide you with information on your share of the settlement monies; and (3) advise you of how your rights may be affected by this Settlement.

Your rights and options – and the deadlines to exercise them – are explained in this Notice. The Court in charge of this case must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement. Please be patient.

| LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT FOR FORMER UNUM EMPLOYEES | |
|---|---|
| **DO NOTHING** | If you do nothing, you will receive your share of the Settlement monies described in this Notice, and you will release all federal and state law wage and hour claims that you may have against Unum through the date the Court approves the Settlement. |
| **OBJECT** | You can object to the Settlement by following the procedures set forth in Section 9 below. If the Court rejects your objection, you will be bound by the terms of the Settlement and will be provided your share of the Settlement. If you follow the objection procedures, you may appear at the Fairness Hearing to speak to the Court about the fairness of the Settlement. |

## BASIC INFORMATION

### 1.     Why did I get this notice?

You are receiving this Notice because you are a "Settlement Class Member," meaning that: (1) you are an FLSA Opt-in Plaintiff because you submitted a signed "opt-in" form to join the case; and/or (2) you are a member of the Maine Class certified by the Court. The Court ordered this Notice to be sent to you because you have a right to know about a proposed Settlement and your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections are heard, payments will be mailed to you by the same Settlement Administrator that mailed you this Notice. There are 947 Settlement Class Members, including you. This Lawsuit is known as *Loomis et al. v. Unum Group Corp.,* Case No. 1:20-cv-251 (E.D. Tenn.).

### 2.     What is this Lawsuit about?

This Lawsuit is about whether Unum was required to pay Plaintiffs and Settlement Class Members overtime pay. Specifically, Plaintiffs allege that Unum violated Maine Law and the FLSA by misclassifying them as exempt from overtime pay laws and by failing to pay them and all other Settlement Class Members (who worked as Disability Benefits Specialists ("DBS") or Life Event Specialists ("LES") processing long-term, short-term, or individual disability claims) overtime compensation. Unum denies the allegations in the Lawsuit and denies that it violated the law.

### 3.     Why is there a Settlement?

The Court certified this lawsuit as a collective action under the FLSA on May 31, 2021. Thereafter, DBSs had the opportunity to opt into the lawsuit. There are 28 FLSA Opt-ins who worked outside of Maine who are covered by the Settlement. On May 4, 2023, the Court certified a class action of all DBSs who worked in Maine. Thereafter, Notice issued to Class Members, describing the lawsuit and explaining that Maine Class Members who do not affirmatively and timely opt out would be bound by the outcome of the case, including any settlement. All FLSA Opt-ins who worked in Maine are also part of the Maine Class. Following the Notice period, the Parties entered settlement negotiations and reached a Settlement Agreement with the assistance of an experienced mediator. The Court has not issued a final judgment in favor of Plaintiffs or Defendant. Rather, to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the Parties have concluded that it is in their best interests to resolve and settle the action by entering into a Settlement Agreement. The Plaintiffs who filed the Lawsuit and Unum have reached a Settlement Agreement

subject to final approval by the Court. Both sides believe they would have prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a Settlement.

## WHO IS INCLUDED IN THE SETTLEMENT

| **5.** | **How do I know if I am part of the Settlement?** |
|---|---|

You are part of this Settlement because you either: (1) worked for Unum in Maine as an exempt DBS or LES, processing long-term disability or short-term disability claims, and did not opt out during the Notice period; and/or (2) you worked for Unum as an exempt DBS or LES processing disability claims and opted into the FLSA collective action.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| **6.** | **What does the settlement provide?** |
|---|---|

Unum has agreed to pay up to **$14,800,000.00** to resolve the entire case. This amount will be allocated as follows: counsel will file a motion requesting approval of $45,000.00 to be allocated as Service Awards, with Named Plaintiff Kerry Ann Loomis receiving $15,000.00, and the remaining three Class Representatives receiving $10,000.00 each for their dedicated service to the Class; $4,933,333.33 to be paid as attorneys' fees; $165,154.34 to be paid as litigation expenses; and $15,523.00 to be paid to the third-party Settlement Administrator for expenses associated with administering the Settlement. The remaining amount following Court approval (**$9,640,989.33** if all requested amounts are approved) will be paid to the Settlement Class Members ("Net Settlement Fund.")

Because it is impossible to know which claims would have been successful, how much, if any, unpaid overtime would have been awarded each week on a class-wide basis, the amount of liquidated damages owed, and how overtime would have been calculated, the settlement payment amounts are based on each Settlement Class Member's number of weeks of employment as an exempt DBS/LES processing disability claims during the applicable recovery period. Each Settlement Class Member was credited with 1 point for each week he/she worked in a DBS/LES exempt position processing disability claims during the relevant recovery period. For those DBSs/LESs who worked in Maine, the recovery period starts on September 1, 2014, which is 6 years prior to the date the complaint was filed in Court. This is because the Maine Law has a 6-year statute of limitations. For those DBSs/LESs who are FLSA Opt-in Plaintiffs and who worked outside of Maine, the recovery period starts on March 22, 2018, which reflects the maximum three-year recovery period allowed by the FLSA. The recovery period for all Settlement Class Members ends on September 17, 2024, the date the Parties reached agreement to resolve this case. The total number of points for all Settlement Class Members were divided into the Net Settlement Fund to determine the value of a point. The Settlement Payment to each Settlement Class Member is his/her number of points multiplied by the value of a point. The approximate value of a point is $63.87. You have a total of ==X== points. Accordingly, your approximate share of the Net Settlement Fund is ==$X.== Fifty percent (50%) of your Settlement Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages. The amounts are approximate in that if any Settlement Class Member presents a valid and timely dispute regarding the number of weeks worked as an exempt DBS/LES during the applicable recovery period, the value of a point will decrease, and, as a result, each Settlement Class Member's Settlement Payments will be adjusted accordingly. Only timely disputes with supporting documentation, namely pay stubs showing your title and dates of employment, will be considered. To be timely, a dispute must be postmarked by [==DATE 60 days==

==after Notice mailing==] and sent to the Settlement Administrator at the address set forth in Paragraph 9 below. Additionally, Settlement Class Members who are current employees must sign an "Affirmation of Job Duties" form to receive their share of the Settlement. Settlement allocations for current employees who choose not to sign the form (for claims equal to or less than $16,000.00) will be summed and reallocated to those Settlement Class Members who are participating in the Settlement.

The settlement monies allocated as backpay will be subject to withholding for income tax purposes and reported to the IRS for tax purposes on a W-2 form, while the remaining monies will be reported to the IRS for tax purposes on a 1099-MISC form. Neither Class Counsel nor Defendant make any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

The Class Representatives and Class Counsel determined that the settlement allocations were fair after considering a number of factors, including litigation risk with respect to Defendant's exemption defense, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, and risks related to proving that Settlement Class Members were suffered or permitted to work overtime given the remote nature of many Class Members' work.

| 7. | What am I giving up? |
|---|---|

If the Court grants final approval of the Settlement, your claim will be dismissed with prejudice and you will fully release and discharge Defendant through the date of final approval from all federal and state law wage and hour claims related to hours worked. This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendant regarding such state or federal wage and hour claims. The Release provides that Settlement Class Members will be releasing all Released Claims, which are defined as follows:

> any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, including attorneys' fees whether at common law, under statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member who has or might have, of any kind whatsoever, that relate to payment of wages or compensation by Defendant for hours worked through the date that the Court finally approves this Settlement. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims against Defendant for unpaid wages, minimum wages, overtime, late payment of wages, incomplete or inaccurate wage statements, or damages or relief of any kind including but not limited to the FLSA, Maine Law, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation (including liquidated damages, penalties, interest, costs, attorneys' fees, and expenses of the settlement administrator); (iii) any and all claims under or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100 *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit

any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not related to an alleged wage-and-hour violation; and (iv) any claim that payments made to any Settlement Class Member or any Service Award results in any credit or otherwise affects the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including the date that the Court finally approves this Agreement. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment and not related to the payment of minimum and overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state and local law, statutes and regulations. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims under 28 U.S.C. § 1332(d).

| | |
|---|---|
| **8.** | **Do I have a lawyer in this case?** |

The Court has decided that Plaintiffs' lawyers (Molly Elkin and John Stewart of McGillivary Steele Elkin LLP and Mel Fowler-Green and Chase Teeples of Yezbak Law Offices) are qualified to represent you and the Class. These lawyers are called "Class Counsel." You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney to be able to participate. The lawyers will be compensated in accordance with section 6 above.

## OBJECTING TO THE SETTLEMENT

| | |
|---|---|
| **9.** | **How do I tell the Court if I don't like the settlement?** |

To object to the Settlement, a Settlement Class Member must file with the U.S. District Court for the Eastern District of Tennessee a written objection to the Settlement, and, if the Settlement Class Member intends to appear at the Fairness Hearing, a written notice of their intention to appear, with copies to the Settlement Administrator at the address listed below, postmarked no later than DATE [60 days after mailing of the Notice]. The statement submitted ("Objection Statement") must set forth in clear and concise terms the legal and factual arguments supporting the objection. Any reasons not included in the Objection Statement will not be considered. The Objection Statement must also include the name, address, email, and telephone number for the individual making the objection.

Address of Claims Administrator

## THE COURT'S FAIRNESS HEARING

| | |
|---|---|
| **10.** | **When and where will the Court decide whether to approve the settlement?** |

The Court will hold a Fairness Hearing on _____ at the United States District Court for the Eastern District of Tennessee, Joel W. Solomon Federal Building, 900 Georgia Avenue, Chattanooga, TN 37402 in Courtroom _____ . At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them.

The Court will listen to any Settlement Class Member who has complied with the objection procedures above and asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and the level of Service Awards to the Named Plaintiffs. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

| **11.** | **Do I have to come to the hearing?** |
|---|---|

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| **12.** | **May I speak at the hearing?** |
|---|---|

If you file a timely Objection Statement, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words, "I intend to appear at the Fairness Hearing," in your Objection Statement, which must be filed according to the procedure described in Section 9 above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection.

## GETTING MORE INFORMATION

| **13.** | **Are there more details about the settlement?** |
|---|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the address in Section 9. If you have other questions about the Settlement, then you may contact Class Counsel at settlement@mselaborlaw.com or by telephone at (202) 833-8855.

DATED:        [Insert Date of Mailing], 2024

Page **6** of 6

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

# EXHIBIT B

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

[NAME]
[ADDRESS]
[CITY, STATE ZIP]
[Ref. No. ]
[SSN]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | |
|---|---|
| **Kerry Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop, individually and on behalf of others similarly situated,** | **Civil Action No. 1:20-cv-251** |
| **Plaintiffs,** | **Honorable Curtis L Collier** |
| **v.** | |
| **Unum Group Corporation,** | **Magistrate Judge Christopher H. Steger** |
| **Defendant.** | |

# NOTICE OF OVERTIME PAY CLASS ACTION SETTLEMENT FOR CURRENT UNUM EMPLOYEES

**You are entitled to a payment in the amount of $X from a class action lawsuit if you timely submit the form described in Section 10 below.**
*A federal court has authorized this notice. This is not a solicitation from a lawyer.*

The purpose of this Notice is to: (1) inform you about a Settlement in an overtime lawsuit that includes a "collective action" under the Fair Labor Standards Act ("FLSA") and a "Class Action" under Maine Law ("Lawsuit") against Unum Group Corporation ("Unum" or "Defendant") in which you are a Class Member and/or a member of the FLSA collective; (2) provide you with information on your share of the settlement monies; and (3) advise you of how your rights may be affected by this Settlement.

Your rights and options – and the deadlines to exercise them – are explained in this Notice. The Court in charge of this case must decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement. Please be patient.

Case 1:20-cv-00251-CLC-CHS    Document 309-1    Filed 10/23/24    Page 43 of 51
PageID #: 9050

| LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT FOR CURRENT UNUM EMPLOYEES | |
|---|---|
| **SIGN AFFIRMATION OF JOB DUTIES FORM** | To receive your share of the Settlement monies, you must sign and timely return the Affirmation of Job Duties Form described in Paragraph 10 and attached to this Notice. Upon Court approval of the Settlement, you will receive your share of the Settlement monies and release all your state and federal wage and hour claims against Unum through the date the Court approves the Settlement. |
| **OBJECT** | You can object to the Settlement by following the procedures set forth in Section 9 below. If the Court rejects your objection, you will be bound by the terms of the Settlement and will be provided your share of the Settlement as long as you submit the Affirmation of Job Duties Form. If you follow the objection procedures, you may appear at the Fairness Hearing to speak to the Court about the fairness of the Settlement. |
| **DO NOTHING** | If you do nothing, you will NOT receive any of the Settlement monies and you will NOT be bound by the Release described in Paragraph 7. |

## BASIC INFORMATION

### 1.     Why did I get this notice?

You are receiving this Notice because you currently work for Unum and are a "Settlement Class Member," meaning that: (1) you are an FLSA Opt-in Plaintiff because you submitted a signed "opt-in" form to join the case; and/or (2) you are a member of the Maine Class certified by the Court. The Court ordered this Notice to be sent to you because you have a right to know about a proposed Settlement, as well as about your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections are heard, **payments will be mailed to you by the same Settlement Administrator that mailed you this Notice, but only if you choose to sign and timely return the Affirmation of Job Duties Form attached to this Notice**. There are 947 Settlement Class Members, including you. This Lawsuit is known as *Loomis et al. v. Unum Group Corp.,* Case No. 1:20cv251 (E.D. Tenn.).

### 2.     What is this Lawsuit about?

This Lawsuit is about whether Unum was required to pay Plaintiffs and Settlement Class Members overtime pay. Specifically, Plaintiffs allege that Unum violated Maine Law and the FLSA by misclassifying them as exempt from overtime pay laws and by failing to pay them and all other Settlement Class Members (who worked as Disability Benefits Specialists ("DBS") or Life Event Specialists ("LES") processing long-term, short-term, or individual disability claims) overtime compensation. Unum denies the allegations in the Lawsuit and denies that it violated the law.

### 3.     Why is there a Settlement?

The Court certified this lawsuit as a collective action under the FLSA on May 31, 2021. Thereafter, DBSs had the opportunity to opt-into the lawsuit. There are 28 FLSA Opt-ins who worked outside of Maine who are covered by the Settlement. On May 4, 2023, the Court certified a class action of all DBSs who worked in Maine. Thereafter, Notice issued to Class Members describing the lawsuit

and explaining that Maine Class Members who do not affirmatively and timely opt-out would be bound by the outcome of the case, including any settlement. All FLSA Opt-ins who worked in Maine are also part of the Maine Class. Following the Notice period, the Parties entered settlement negotiations and reached a Settlement Agreement with the assistance of an experienced mediator. The Court has not issued a final judgment in favor of Plaintiffs or Defendant. Rather, to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the Parties have concluded that it is in their best interests to resolve and settle the action by entering into a Settlement Agreement. The Plaintiffs who filed the Lawsuit and Unum have reached a Settlement Agreement subject to final approval by the Court. Both sides believe they would have prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a Settlement.

## WHO IS INCLUDED IN THE SETTLEMENT

| 5. | How do I know if I am part of the Settlement? |
|---|---|

You are part of this Settlement because you either: (1) work for Unum in Maine as an exempt DBS or LES, processing long-term disability or short-term disability claims, and did not opt out during the Notice period; and/or (2) you work for Unum as an exempt DBS or LES processing disability claims and opted into the FLSA collective action.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. | What does the settlement provide? |
|---|---|

Unum has agreed to pay up to **$14,800,000.00** to resolve the entire case. This amount will be allocated as follows: counsel will file a motion requesting approval of $45,000.00 to be allocated as Service Awards, with Named Plaintiff Kerry Ann Loomis receiving $15,000.00, and the remaining three Class Representatives receiving $10,000.00 each for their dedicated service to the Class; $4,933,333.33 to be paid as attorneys' fees; $165,154.34 to be paid as litigation expenses; and $15,523.00 to be paid to the third-party Settlement Administrator for expenses associated with administering the Settlement. The remaining amount following Court approval (**$9,640,989.33** if all requested amounts are approved) will be paid to the Settlement Class Members ("Net Settlement Fund.")

Because it is impossible to know which claims would have been successful, how much, if any, unpaid overtime would have been awarded each week on a class-wide basis, the amount of liquidated damages owed, and how overtime would have been calculated, the settlement payment amounts are based on each Settlement Class Member's number of weeks of employment as an exempt DBS/LES processing disability claims during the applicable recovery period. Each Settlement Class Member was credited with 1 point for each week he/she worked in a DBS/LES exempt position processing disability claims during the relevant recovery period. For those DBSs/LESs who work or worked in Maine, the recovery period starts on September 1, 2014, which is 6 years prior to the date the complaint was filed in Court. This is because the Maine Law has a 6-year statute of limitations. For those DBSs/LESs who are FLSA Opt-in Plaintiffs and who work or worked outside of Maine, the recovery period starts on March 22, 2018, which reflects the maximum three-year recovery period allowed by the FLSA. The recovery period for all Settlement Class Members ends on September 17, 2024, the date the Parties reached agreement to resolve this case. The total number of points for all Settlement Class Members were divided into the Net Settlement Fund to determine the value of a point. The Settlement Payment to each Settlement Class Member is his/her number of points multiplied by the value of a point. The approximate value of a

point is $63.87. You have a total of **X** points. Accordingly, **provided that you complete and timely return the Affirmation of Job Duties Form, your approximate share of the Net Settlement Fund is $X.** Fifty percent (50%) of your Settlement Payment will constitute backpay, and fifty percent (50%) will constitute liquidated damages. The amounts are approximate in that if any Settlement Class Member presents a valid and timely dispute regarding the number of weeks worked as an exempt DBS/LES during the applicable recovery period, the value of a point will decrease, and, as a result, each Settlement Class Member's Settlement Payments will be adjusted accordingly. Only timely disputes with supporting documentation, namely pay stubs showing your title and dates of employment, will be considered. To be timely, a dispute must be postmarked by [DATE 60 days after Notice mailing] and sent to the Settlement Administrator at the address set forth in Paragraph 9 below. Additionally, settlement allocations for current employees who choose not to sign the Job Duties Affirmation form (for claims equal to or less than $16,000.00r) will be summed and reallocated to those Settlement Class Members who are participating in the Settlement.

The settlement monies allocated as backpay will be subject to withholding for income tax purposes and reported to the IRS for tax purposes on a W-2 form, while the remaining monies will be reported to the IRS for tax purposes on a 1099-MISC form. Neither Class Counsel nor Defendant make any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

The Class Representatives and Class Counsel determined that the settlement allocations were fair after considering a number of factors, including litigation risk with respect to Defendant's exemption defense, litigation risks at trial and on appeal, the uncertainty regarding proving the number of hours of unpaid overtime work at issue, and risks related to proving that Settlement Class Members were suffered or permitted to work overtime given the remote nature of many Class Members' work.

| **7.** | **What am I giving up?** |
| --- | --- |

If the Court grants final approval of the Settlement, and provided you timely submit the Job Duties Affirmation form, your claim will be dismissed with prejudice and you will fully release and discharge Defendant through the date of final approval from all federal and state law wage and hour claims related to hours worked. This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendant regarding such state or federal wage and hour claims. The Release provides that Settlement Class Members will be releasing all Released Claims, which are defined as follows:

> any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, including attorneys' fees whether at common law, under statute, ordinance or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Settlement Class Member who has or might have, of any kind whatsoever, that relate to payment of wages or compensation by Defendant for hours worked through the date that the Court finally approves this Settlement. The Released Claims specifically include without limitation: (i) any and all claims asserted in the Litigation; (ii) any and all claims against Defendant for unpaid wages, minimum wages, overtime, late payment of wages, incomplete or inaccurate wage statements,

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

or damages or relief of any kind including but not limited to the FLSA, Maine Law, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation (including liquidated damages, penalties, interest, costs, attorneys' fees, and expenses of the settlement administrator); (iii) any and all claims under or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100 *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Settlement Class Member's account and/or benefits for all hours worked or all compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not related to an alleged wage-and-hour violation; and (iv) any claim that payments made to any Settlement Class Member or any Service Award results in any credit or otherwise affects the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan. The settlements, compromises, releases, and discharges described in the foregoing shall extend to any such claims that arose at any time up to and including the date that the Court finally approves this Agreement. The Released Claims do not include claims of employment discrimination, civil rights violations, or other claims related to employment and not related to the payment of minimum and overtime wages including without limitation Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, or ERISA (except as otherwise stated herein) or other similar state and local law, statutes and regulations. The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims under 28 U.S.C. § 1332(d).

If you do not sign the Job Duties Affirmation form, then you will not be paid any Settlement monies, and the foregoing Release will not apply to you.

| **8.** | **Do I have a lawyer in this case?** |
|---|---|

The Court has decided that Plaintiffs' lawyers (Molly Elkin and John Stewart of McGillivary Steele Elkin LLP and Mel Fowler-Green and Chase Teeples of Yezbak Law Offices) are qualified to represent you and the Class. These lawyers are called "Class Counsel." You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney to be able to participate. The lawyers will be compensated in accordance with section 6 above.

## OBJECTING TO THE SETTLEMENT

| **9.** | **How do I tell the Court if I don't like the settlement?** |
|---|---|

To object to the Settlement, a Settlement Class Member must file with the U.S. District Court for the Eastern District of Tennessee a written objection to the Settlement, and, if the Settlement Class Member intends to appear at the Fairness Hearing, a written notice of their intention to appear, with copies to the Settlement Administrator at the address listed below, postmarked no later than DATE [60 days after mailing of the Notice]. The statement submitted ("Objection Statement") must set forth in clear and concise terms the legal and factual arguments supporting the objection. Any reasons not included in the Objection Statement will not be considered. The Objection Statement

must also include the name, address, email, and telephone number for the individual making the objection.

<mark>Address and Email Address of Claims Administrator</mark>

## JOB DUTIES AFFIRMATION FORM

| 10. | Why do I need to Sign the Job Duties Affirmation Form to Receive my Settlement? |
|---|---|

As a current employee, to receive your share of the Settlement, you are required to sign and timely submit the Job Duties Affirmation form, which you can submit online to:

**Unum Overtime Pay Settlement**
<mark>**[Website Information]**</mark>
<mark>**[QR Code]**</mark>

Alternatively, you can sign and mail or scan and email the attached form to the Settlement Administrator at the address listed above in Paragraph 9 postmarked by <mark>DATE [60 days after mailing of the Notice]</mark>.  Defendant is not planning to reclassify DBSs or LESs as non-exempt because it expects its DBSs and LESs to use discretion and judgment in managing the disability claims assigned to them, a factor that is relevant to determining overtime eligibility.  If at any point a DBS or LES is not exercising the discretion and judgment that Defendant expects, it wants to receive notice so that it can address the issue.  The form thus provides that any DBS or LES who believes they are not permitted to use discretion and judgment in managing their claims must promptly notify, via email, the Employee Relations Consultant assigned to their Unit. Be aware that failure to notify the Employee Relations Consultant in accordance with those instructions may cause challenges for DBSs or LESs seeking to recover overtime pay in future litigation by claiming that they do not exercise discretion and judgment.  The Court has not taken a position on this issue. It is entirely up to you as to whether to sign the form.  **If you sign and return it, you will receive your share of the Settlement and will release Unum from all state and federal wage and hour claims. If you do not sign it, you will not be bound by the Settlement and <u>will NOT receive any Settlement monies</u>, but you will not be subject to the Release set forth in Section 7 above.**

## THE COURT'S FAIRNESS HEARING

| 11. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a Fairness Hearing on <mark>_____</mark> at the United States District Court for the Eastern District of Tennessee, Joel W. Solomon Federal Building, 900 Georgia Avenue, Chattanooga, TN 37402 in Courtroom <mark>____</mark>. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to any Settlement Class Member who has complied with the objection procedures above and asked to speak at the hearing.  The Court may also decide how much to pay Class Counsel and the level of Service Awards to the Named Plaintiffs. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

| 12. | Do I have to come to the hearing? |
|---|---|

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| 13. | May I speak at the hearing? |
|---|---|

If you file a timely Objection Statement, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words, "I intend to appear at the Fairness Hearing," in your Objection Statement, which must be filed according to the procedure described in Section 9 above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection.

## GETTING MORE INFORMATION

| 14. | Are there more details about the settlement? |
|---|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the address set forth in Section 9. If you have other questions about the Settlement, then you may contact Class Counsel at settlement@mselaborlaw.com or by telephone at (202) 833-8855.

DATED:    [Insert Date of Mailing], 2024

# EXHIBIT   C

Docusign Envelope ID: 28AAB8CF-A262-47A0-BBA8-D12AF474E338

**Job Duties**
**STD/IDI/LTD Benefits Specialist and Life Event Specialist**

I, [name], hereby affirm that I am employed as a Benefits Specialist ("BS") or Life Event Specialist ("LES") at Unum.

I understand, both from my training at Unum and from Unum's Benefits Center Claim Manual ("Claims Manual"), that in my role as a BS/LES, Unum expects me to exercise discretion and my own judgment in a range of tasks associated with managing disability claims. Some of the areas where I may have to use judgment include:

- determining whether a claimant is eligible for benefits under his/her particular policy, which in turn, requires that I interpret and apply the provisions of that policy;
- determining, where appropriate, which Unum resources (such as clinical, vocational, financial, medical consultants and/or managers) I should consult for a particular claim;
- determining what factual information (such as financial, medical records, etc.) to gather initially and reassess what additional factual information may be needed as new information is obtained;
- determining applicable questions to ask during calls with the claimant and be prepared to ask probing questions when necessary;
- identifying and resolving internal inconsistencies (so-called "red flags") in a claim file;
- determining whether a claimant is interested in returning to work;
- determining when a claim is ready for a decision; and
- [for LTD and IDI: recommending to approve or deny a claim with associated rationale for initial liability and during ongoing claim management] [for STD/LES: approving or recommending denial of a claim with associated rationale for initial liability and during ongoing claim management].

I acknowledge that according to the Claims Manual, "[t]he BS is responsible for the implementation of appropriate actions and for all decisions made on his/her assigned claim."

I further acknowledge that according to the Claims Manual, "[d]epending on the unique facts of a claim, 1 or more of the guidelines contained in the Claims Manual may or may not be applicable."

I further acknowledge that according to the Claims Manual, "[t]he Claims Manual is not meant to replace independent thought and analysis by claims professionals."

If, in the past, I have not exercised discretion and judgment in managing disability claims at Unum (either because of perceived "micromanagement" by my manager or for other reasons), I now understand that that was contrary to Unum's expectations for how I should perform my job duties.

If, in the future, I find that I am not able or expected to exercise discretion and my own judgment in managing disability claims at Unum, I agree to promptly notify, via email, the Employee Relations Consultant assigned to my unit.

_____                     _____
[Employee Name]                                              Date