# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | |
|---|---|
| Kerry Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop, individually and on behalf of others similarly situated, | Civil Action No. 1:20-cv-251 |
| **Plaintiffs,** | **Honorable Curtis L Collier** |
| **v.** | **Magistrate Judge Christopher H. Steger** |
| Unum Group Corporation, | |
| **Defendant.** | |

## JOINT MOTION FOR FINAL APPROVAL OF FLSA AND CLASS ACTION SETTLEMENT

## Table of Contents

I.      Introduction ................................................................................................. 1

II.     The Preliminary Approval Order .............................................................. 3

III.    BACKGROUND AND PROCEDURAL HISTORY ................................. 3

IV.     SUMMARY OF THE PRELIMINARILY APPROVED SETTLEMENT
        AGREEMENT ............................................................................................. 4

V.      ISSUANCE AND RESULTS OF NOTICE TO THE CLASS ................... 5

        a. The Settlement Administrator Sent Required CAFA Notices and Successfully Mailed
           Notice to the Settlement Class Members. .................................................. 5

        b. No Class Members Objected to the Settlement Agreement............................ 7

        c. Participation in the Settlement Was Robust, and the Reaction of the Settlement Class
           Was Overwhelmingly Positive. ................................................................. 8

VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE RULE 23 CLASS
        ACTION SETTLEMENT .......................................................................... 9

        a. Legal Standard for Final Approval of Rule 23 Settlement ............................ 9

        b. The Settlement Satisfies the Requirements of Rule 23(e)(2) and the *UAW* Factors. .... 10

            1.   Adequacy of Representation and Arm's Length Negotiation ......................... 10

            2.   Adequacy of Relief and Equitable Treatment of Class Members ................... 12

        c. The Service Awards to the Class Representatives Should be Approved........................ 14

VII.    APPROVAL OF PLAINTIFFS' FLSA SETTLEMENT SHOULD BE
        CONFIRMED. ......................................................................................... 15

VIII.   The Settlement Administrator's Fees Should Be Approved. ...................................... 16

IX.     CONCLUSION ....................................................................................... 16

## Table of Authorities

**Cases**

*Arledge v. Domino's Pizza, Inc.*,
    2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018)...................................................... 14

*Brandenburg v. Cousin Vinny's Pizza,*
    *LLC,* 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019)............................................ 14

*Busby v. Bonner*,
    No. 2:20-CV-2359, 2021 WL 4127775 (W.D. Tenn. Jan. 28, 2021) ....................................... 10

*Davidson v. Henkel Corp.*,
    2015 U.S. Dist. LEXIS 195088 (E.D. Mich. Dec. 8, 2015)..................................................... 15

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .......................................................................................... 10, 16

*Johnson v. Midwest Logistics Sys.*,
    2013 WL 2295880 (S.D. Ohio May 24, 2013) ....................................................................... 15

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ............................................................................................. 16

*Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*,
    2016 U.S. Dist. LEXIS 128819 (S.D. Ohio Sept. 21, 2016) ................................................... 15

*Salinas v. U.S. Xpress Enters., Inc.*,
    2018 U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018)...................................................... 14

*Swigart v. Fifth Third Bank*,
    2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014)....................................................... 15

*Thornton v. E. Tex. Motor Freight*,
    497 F.2d 416 (6th Cir. 1974) ................................................................................................. 14

*Whitlock v. FSL Mgmt., LLC*,
    843 F.3d 1084 (6th Cir. 2016) ............................................................................................... 10

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................................................ 5

29 U.S.C. § 216(b) .......................................................................................................................... 3

29 U.S.C. §§ 201–19 ...................................................................................................................... 1

Me. Rev. Stat. Ann. §§ 661–73........................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 10, 13

Fed. R. Civ. P. 23(e)(2)(A)–(D) .......................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................. 12

# I. INTRODUCTION

Class Representatives Kerri Ann Loomis, Lisa Larensen, Jessica DePuydt, and Chris Roop, on behalf of themselves and 943 other current and former Disability Benefit Specialists ("DBS") and Life Events Specialists ("LES")[1] (collectively, "Settlement Class Members"), and Defendant Unum Group Corporation ("Defendant" or "Unum") (collectively, the "Parties") jointly move this Court for final approval of their settlement in this hybrid overtime lawsuit under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, and Maine wage and hour laws, *see* 26 Me. Rev. Stat. Ann. §§ 661–73 (the "Maine Law").

The Parties' Settlement Agreement ("Agreement"), which was filed previously as Exhibit 1 to the Parties' Joint Motion for Preliminary Approval of FLSA and Class Action Settlement ("Preliminary Approval Motion") (Doc. 309; 309-1), provides for a payment of up to $14,800,000.00. Following the class notice and response period, $14,613,406.37 (over 98%) of the possible payment will be paid out under the settlement. For the reasons stated in the Preliminary Approval Motion (Doc. 309) and in this Court's Memorandum Order granting preliminary approval (Doc. 310) ("Preliminary Approval Order"), as well as the additional reasons set forth below, the Court should finally approve this settlement as fair and reasonable and because it provides more-than-adequate relief for the 4 Class Representatives, 28 Opt-in Plaintiffs,[2] and 915

---

[1] As noted in the Preliminary Approval Motion, seven Rule 23 class members were inadvertently excluded from the original class notice. On October 10, 2024, these seven class members were sent class notice with a 20-day opt-out period. None of these seven class members opted out, and therefore the number of class members remains unchanged.

[2] As noted in the Preliminary Approval Motion, although there are 67 opt-in plaintiffs, 39 are also eligible for the Rule 23 class because they worked in Maine during the class recovery period. Because the Maine law overtime claims have a longer recovery period than under the FLSA (due to a longer statute of limitations) but otherwise provide for parallel relief, these 39 Opt-in Plaintiffs who worked in Maine are counted among the Class Members. The 28 remaining Opt-in Plaintiffs, who possess FLSA claims only, are referred to herein as the FLSA Opt-ins.

Class Members. The settlement resolves all claims that were asserted or that could have been asserted in this lawsuit on the same facts and satisfies all criteria for final approval. Accordingly, the Parties respectfully request that the Court enter and Order granting this motion and:

(1)     stating that there is a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, overtime compensation, or statutory damages;

(2)     granting final approval as to the Agreement, including all information contained in the Notices, as fair, reasonable, adequate, and binding on Plaintiffs and all Settlement Class Members who are participating in the settlement;

(3)     approving the procedure for Defendant to pay the Gross Settlement Fund into the QSF as described in Paragraph 10.5 of the Agreement;

(4)     ordering administration of the QSF as described in Paragraphs 10–13 of the Agreement;

(5)     approving the release of claims set forth in the Agreement;

(6)     ordering the dismissal with prejudice of the claims of Plaintiffs and all Settlement Class Members who are participating in the settlement;

(7)     ordering entry of a Stipulation of Dismissal in accordance with the Agreement;

(8)     approving the award of attorneys' fees and reimbursement of litigation expenses set forth in Paragraphs 10.4, 11.2, and 11.4 of the Agreement and further detailed in Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Costs ("Fee Petition") (Doc. 312-1);

(9)     retaining jurisdiction over the interpretation and implementation of the Agreement, as well as all matters arising out of or relating to the interpretation or implementation of the Agreement, including but not limited to enjoining any pursuit of claims covered by the release approved by the Court.

## II.     THE PRELIMINARY APPROVAL ORDER

On October 23, 2024, the Parties jointly submitted their Preliminary Approval Motion (Doc. 309), which detailed the procedural and factual history of this litigation. On January 28, 2025, the Court granted the Preliminary Approval Motion and (1) preliminarily approved the settlement embodied in the Agreement (Doc. 309-1); (2) approved the two class action settlement notices (*id.* at 36–49); (3) appointed Rust Consulting, Inc., ("Rust") as the settlement administrator; (4) approved the settlement as fair, reasonable, and adequate, as required by the FLSA; and (5) set a final approval and fairness hearing ("Fairness Hearing") for Thursday, April 17, 2025, at 2:00 p.m. Eastern Time (Doc. 310 at 14). At the Fairness Hearing, the Court indicated it will consider whether:

> (a) the proposed settlement agreement is fair, reasonable, and adequate and should be approved by the Court;
>
> (b) the request for attorneys' fees and costs should be approved;[3]
>
> (c) the request for service payments to the class representatives should be approved; and
>
> (d) to rule on such other matters as the Court may deem appropriate.

(*Id.*).

## III.     BACKGROUND AND PROCEDURAL HISTORY

As set forth more fully in the Parties' Preliminary Approval Motion (Doc. 309) and in the Court's Preliminary Approval Order (Doc. 310), this case involves parallel claims for unpaid overtime under the FLSA and the Maine Law (Docs. 133, 310). The Court  previously granted conditional certification of an FLSA collective action under 29 U.S.C. § 216(b) and certified a Rule 23 class of employees who worked in covered positions in Maine during the recovery period

---

[3] On this issue, Plaintiffs have separately filed Plaintiffs' Fee Petition (Doc. 312).

(Docs. 96, 261).

Both sides have zealously litigated this case for over four years. (*See* Docs. 1, 309, 310 at 2). Although settlement negotiations, like the litigation, were lengthy and hard-fought, the Parties reached an agreement in principle at mediation on September 17, 2024, which led to the Agreement executed on October 23, 2024, and preliminarily approved by the Court in its Preliminary Approval Order on January 28, 2025. (Doc. 309-3 at ¶¶ 4, 10–11; Doc. 310 at 2).

## IV.   SUMMARY OF THE PRELIMINARILY APPROVED SETTLEMENT AGREEMENT

The Parties again recite the following details of the Agreement, with minor changes to reflect the passage of time where appropriate. The proposed Agreement includes a Gross Settlement Fund of $14,800,000.00. Of this amount, Class Counsel is seeking $4,933,333.33 in attorneys' fees, which equals one third of the Fund, and $165,154.34 in expenses to be paid from the Fund. (Doc. 309-1 at ¶¶ 9.4, 11.2, 11.4). An amount not to exceed $15,523.00 shall be allocated from the Fund as Settlement Administration Costs to be paid to the third-party Settlement Administrator. (*Id.* at ¶ 11.3). Additionally, Plaintiffs request approval of service payments totaling $45,000.00 for the four Class Representatives, with $15,000.00 paid to the original, sole Named Plaintiff Kerry Ann Loomis, and $10,000.00 each paid to Lisa Larensen, Jessica DePuydt, and Chris Roop. (*Id.* at ¶ 11.5). All remaining amounts (up to $9,640,989.33 if the foregoing amounts are approved) shall be distributed to Settlement Class Members as backpay and liquidated damages, with 50% of the amount allocated as wages and 50% as liquidated damages. (*Id.* at ¶¶ 11.7–11.8). Defendant shall be responsible for paying payroll taxes, which shall be paid in addition to the Gross Settlement Fund. (*Id.* at ¶¶ 1.5, 10.3).

Per the Agreement and this Court's Preliminary Approval Order, the 947 Settlement Class Members were each sent one of two Notices outlining the terms of the Settlement. (Doc. 309-1 at

Ex. 1.A, Ex. 1.B). The Notices contain information regarding the Settlement Class Members' rights and instructions on how to object to the Agreement. *Id.* The Notices also set forth (1) the full language of the release contained in the Agreement; (2) the estimated amount of each Settlement Class Member's individual settlement award; (3) how the settlement payments will be allocated and taxed; (4) how the settlement payments were computed, namely pursuant to a point system based on the number of weeks each Settlement Class Member occupied a covered position during the recovery period; and (5) the amounts allocated as attorneys' fees, litigation expenses, service awards, and settlement administration costs. *Id.* Significantly, after receiving the applicable Notice, Settlement Class Members also had an opportunity to dispute their assigned points. *Id.*

Additionally, the Notices sent to Unum employees still employed by Unum in covered positions explained the process for participating in the settlement as a current employee, which required signing and returning the Job Duties Affirmation Form ("JDAF") within the 60-day notice period. (*Id.* at ¶¶ 7.1–7.5; Ex. 1.B; Ex. 1.C). Those of the 220 Settlement Class Members who are current Unum employees and did not return a signed JDAF within the 60-day response period will not receive any payment from the Gross Settlement Fund and will not be bound by the Release. Unclaimed individual settlement amounts exceeding $16,000 will revert to Unum; any individual settlement amounts that do not exceed $16,000 have been summed and reallocated to the Settlement Class Members participating in the settlement. (*Id.* at Ex. 1, ¶¶ 7.4–7.5).

## V.  ISSUANCE AND RESULTS OF NOTICE TO THE CLASS

### a.  The Settlement Administrator Sent Required CAFA Notices and Successfully Mailed Notice to the Settlement Class Members.

On November 4, 2024, Rust mailed Class Action Fairness Act ("CAFA") Notices to the United States Attorney General and States' attorneys general required by CAFA. 28 U.S.C. § 1715(b), (d) (requiring CAFA notice to be sent not later than 10 days after a proposed settlement

of a class action is filed in court, and at least 90 days prior to final approval); *see also* Exhibit 1, Declaration of Eduard Rokhman ("Rokhman Decl."), ¶ 9. Rust has not received any objections to the settlement from the United States Attorney General or any State's attorney general in response to the CAFA Notices. *Id*.

On October 28, 2024, Defendant provided Rust with the class data necessary for distributing notices as required by the Agreement, including names, mailing addresses, telephone numbers, email addresses, current Unum employment status (and most recent State in which he or she worked), Social Security Numbers, and Employee ID numbers. *Id.* at ¶ 8. Rust processed and updated the mailing addresses contained in the Class List provided by Unum, utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* at ¶ 10. The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id.* For any individual who filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Class Notice. *Id.*

Then, following this Court's January 28 Preliminary Approval Order, on February 4, 2025, Rust mailed (via First Class mail) Class Notices containing the Court-approved Notices and, for the 220 Class Members who are still employed by Unum in a covered position,[4] a copy of the JDAF, as required by the Agreement. *Id.* at ¶ 11.

The Notices advised the Settlement Class Members of the procedure for objecting to the settlement and/or appearing at the Fairness Hearing, as well as the requirement to submit any such objections postmarked by April 5, 2025. *Id.* For the 220 Class Members who still occupied covered

---

[4] Although there were 224 Class Members still employed by Unum at the time the class list was originally compiled, 4 of those Class Members had left Unum by the time the Notice was sent, so those 4 were sent the Notice for former employees and not required to sign a JDAF. Accordingly, the total number of Class Members required to return the JDAF was reduced to 220.

positions at Unum, the Notices also advised the Settlement Class Members of the procedure for completing and returning the JDAF and the requirement to submit a completed JDAF online or postmarked by April 5, 2025, to participate in the settlement, as well as the consequences for failing to do so. *Id*.

On March 6, 2025, Rust mailed a reminder postcard to the 127 Class Members who were in the current employee group required to submit a JDAF but had not yet done so. *Id.*, at ¶ 14.

Rust performed 54 address traces on Notices returned as undeliverable. *Id.* at ¶ 12. The address trace utilized the name, previous address, and Social Security Number set forth on the Class List for locating a current address. *Id.* Of the 54 traces performed, 49 more current addresses were obtained, and Notices were promptly re-mailed to those Settlement Class Members via First Class mail. *Id.* Of the 54 traces performed, Rust did not obtain updated addresses for 5 undeliverable Notices. *Id.* Of the 49 Notices mailed to a more current address identified from the trace, 2 Notices were returned to Rust as undeliverable a second time. *Id.* One of the Settlement Class Members whose Notice was undeliverable received the Notice by email. *Id.* As of this date, 6 Notices remain undeliverable. *Id.* All Notices that remain undeliverable are for former employees who do not need to complete a JDAF to participate in the settlement. *Id*. Notice to the Settlement Class was therefore undertaken in a thorough and robust manner, ensuring that as many Settlement Class Members as reasonably possible were aware of the settlement and their rights.

### b. No Class Members Objected to the Settlement Agreement.

Rust obtained a web address (www.JobDutiesForm.com) and set up a website for the settlement, which allowed Settlement Class Members who are current Unum employees to obtain a copy of and submit their JDAF online. *Id.* at ¶ 6. Additionally, Rust maintained a Post Office Box and two email addresses (info@jobdutiesform.com and info@unumsettlement.com) to which Settlement Class Members could submit questions, objections, or otherwise contact the claims

administrator. *Id.* at ¶¶ 4-5. The Notices included the website address and email addresses. *Id.* at ¶¶5-6. Class Counsel, in addition, maintained an email address (settlement@mselaborlaw.com) for any questions about the Settlement and included that email address and other contact information on the Notices. (Doc. 309-1).

The Notices advised Settlement Class Members of their right to object to the settlement and set forth the deadline for objecting to the settlement and/or for submitting disputes regarding point assignment (April 5, 2025). (Doc. 309-1). To date, Rust has not received any objections to the settlement. Rokhman Decl., ¶ 17.

Two Settlement Class Members submitted disputes about their damages award. *Id.* at ¶ 16. Rust forwarded information about the disputes to counsel for the Parties for review, and both disputes have been resolved. *Id.* One dispute resulted in an additional 34 total workweeks of recovery for that Settlement Class Member. The other dispute did not result in any additional workweeks of recovery. Both Settlement Class Members have been notified of their respective point dispute outcome. *Id.*

> **c. Participation in the Settlement Was Robust, and the Reaction of the Settlement Class Was Overwhelmingly Positive.**

Ultimately, 183 of the 220 Class Members who received JDAFs because of their status as current Unum employees in covered positions returned completed JDAFs. *Id.* at ¶ 15. This means that 910 of the 947 Settlement Class Members, or 96% of the Settlement Class Members, will receive the benefit of this settlement. Of the funds that would have been distributed to the 37 Settlement Class Members who elected not to participate in the settlement, only $186,593.63 (the sum of unclaimed distributions over $16,000.00 each) will be deducted from Defendant's obligation to fund the Qualified Settlement Fund, and $262,457.14 (the sum of unclaimed distributions less than $16,000.00 each) will be distributed pro rata to the remaining Class

Members. Further, excluding fees, costs, claims administrator fees, and service awards, $9,454,395.70, or approximately 98%, of the maximum possible distribution under the Agreement ($9,640,989.33) will be distributed to the Settlement Class Members, representing an average per capita distribution of $10,180.56. (Doc. 312-1 at ¶¶ 7, 12) ("Elkin Decl.").

Rust successfully distributed Notice on a class-wide basis, including first-class mail and reminder notices. The JDAF return process for current Unum employees in covered positions was simple and could be completed with a few clicks on the dedicated settlement website. Given that not a single Settlement Class Member objected to the Settlement, the reaction of the Class was uniformly positive.

## VI. THE COURT SHOULD GRANT FINAL APPROVAL OF THE RULE 23 CLASS ACTION SETTLEMENT

This Court has already considered "all the relevant factors" for approval, found that each such factor "supports preliminary approval," and that this settlement "likely" meets the applicable approval criteria under Rule 23 and Sixth Circuit case law. (Doc. 310 at 4–5, 10). As described in this Court's Preliminary Approval Order, the Preliminary Approval Motion, and below, Unum has agreed to pay a substantial sum to the Settlement Class Members in settlement of their claims, and Class Counsel believes that this settlement reflects a fair, reasonable, and adequate result of this *bona fide* dispute. Following the Fairness Hearing, therefore, this Court should grant final approval of this settlement.

### a. Legal Standard for Final Approval of Rule 23 Settlement

As this Court has recognized, Rule 23(e)(2) directs the Court to consider the following factors when determining whether a proposed class settlement should be approved as fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). This list of Rule 23(e)(2) factors "largely encompasses" the *UAW* factors employed by the Sixth Circuit in its fairness analysis. (Doc. 310 at 5); *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (setting out the *UAW* factors) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Consistent with this Court's analytical framework in its Preliminary Approval Order, the Parties have addressed the Rule 23 factors in turn below, supplemented with the *UAW* factors where relevant.

> **b. The Settlement Satisfies the Requirements of Rule 23(e)(2) and the *UAW* Factors.**

> **1. *Adequacy of Representation and Arm's Length Negotiation***

The first two factors—adequacy of representation and whether the proposal was negotiated at arm's length—address "procedural concerns," meaning "the actual performance of counsel acting on behalf of the class," and overlap with the third *UAW* factor, fraud or collusion. (Doc. 310 at 5-6 (quoting *Busby v. Bonner*, No. 2:20-CV-2359, 2021 WL 4127775, at *3 (W.D. Tenn. Jan. 28, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes))).

10

As this Court correctly concluded while granting preliminary approval, Class Counsel is "qualified and experienced in this type of litigation" and "has adequately represented the class." (*Id.* at 6). *See also* Elkin Decl. at ¶¶ 18-36. Indeed, Class Counsel has engaged in over four years of contentious, complex litigation and has obtained excellent results for the Settlement Class Members in the form of settlement distributions to 910 individuals, **after** attorneys' fees, expenses, and service awards, averaging $10,180.56 per person. *Id.* As this Court has observed, these efforts included conducting extensive discovery—through which the Parties developed the factual record sufficiently to make an adequate decision as to settlement—and numerous other tasks through which Class Counsel "demonstrated their competence in class litigation through their discovery and motion practice." (*Id.* at 6–7). This Court also correctly concluded that the Agreement was negotiated at arm's length, with the help of an experienced mediator, another fact demonstrating that the Agreement "is the product of a procedurally fair process," weighing in favor of approval. (*Id.* at 7).

The Notice period has not disturbed any of these circumstances weighing in favor of approval. In fact, the Preliminary Approval Order's determination that the Notices prepared by the Parties were "clear and direct" and "adequately appris[e] the members of the class and affor[d] them the opportunity to make informed decisions in accordance with the requirements of Rule 23(c) and due process" further bolsters the Court's initial conclusion as to the adequacy of Class Counsel's representation. (*Id*. at 12-13). Indeed, with the Notices now issued to the Settlement Class Members, resulting in zero objections and only one correction to Class Counsel's calculations, despite ample opportunity to return such objections and/or corrections, there are no "procedural concerns" with the proposed settlement. These factors accordingly should lead this Court to the same conclusion here as in the Preliminary Approval Order, and the Court should

grant final approval of this fair, reasonable, and adequate settlement.

## 2. *Adequacy of Relief and Equitable Treatment of Class Members*

As the Court previously concluded, the third and fourth Rule 23(e) factors—adequacy of relief and equitable treatment of class members—also weigh in favor of approval. The Court must take into account, as it correctly did in its Preliminary Approval Order: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[5] Fed. R. Civ. P. 23(e)(2)(C).

As to these considerations, the Court correctly concluded in the Preliminary Approval Order that each weighs in favor of approval, because: "there would be significant uncertainty and risk for both sides if this case were to go to trial" (Doc. 310 at 8); continued litigation "would be expensive and delay potential recovery further" (*id.* at 8–9); the "point system" of distribution and payment procedures are "direct and clear" and treat Settlement Class Members equitably relative to each other because each will "receive a settlement award based on the same point system and will be subject to the same release" (*id.* at 9–10); and the amount in fees and costs sought by Class Counsel, which are "equal to one-third of the gross settlement fund," are "within the range of fees

---

[5] The other Rule 23(e)(3) agreement at issue is the term sheet executed at mediation, which was previously disclosed to the Court in the Preliminary Approval Motion and was superseded by the Parties' Agreement (Doc. 309-4). Nothing about this term sheet calls into question the adequacy or the fairness of the settlement for which the Parties are now seeking approval. Additionally, Carol Kennedy, who is not a Class Member and who was not on the list of employees to whom the FLSA Opt-in Notice was sent, nevertheless submitted a signed Opt-in form to the Court on August 6, 2021 (Doc. 103-1). The Parties have agreed to resolve Ms. Kennedy's claims in the agreement attached hereto as Exhibit 2, in which Ms. Kennedy will receive payment in the same amount as if she had been included as an FLSA Opt-in Plaintiff in the distribution calculation at the time of the underlying Agreement. This recovery does not reduce or affect the recovery amounts of any Settlement Class Member. Elkin Decl. at ¶¶ 41.

often awarded in common fund cases, both nationwide and in the Sixth Circuit" (*id.* at 10).[6]

The events since this Court granted preliminary approval have not disturbed these conclusions favoring approval of the Agreement. Rather, the high participation rate in the settlement, as detailed above, only bolsters the conclusion that the relief afforded is adequate. Further, all unclaimed individual settlement amounts that did not exceed $16,000.00 were summed and reallocated to the participating Settlement Class Members, resulting in additional recovery to the participating Settlement Class Members in the total amount of $262,457.14. (Doc. 309-1, ¶¶ 7.4–7.5). As detailed above, $9,454,395.70 (over 98%) of the maximum amount of funds available under the Agreement will be distributed to 910 current and former Unum employees aggrieved by their alleged misclassification. The distribution methodology and recovery amounts laid out in the Notices resulted in **zero** objections and **only two** requests to adjust the calculated distribution amounts, further demonstrating both the fairness of the distribution method and the adequacy of the funds afforded to each Settlement Class Member. Rokhman Decl. at ¶¶ 15-16. The robust claims rate for current employees who had to submit a JDAF and distribution of available settlement funds further demonstrates that the distribution methods were not "unduly demanding" but "instead facilitate[d] filing legitimate claims," (Doc. 310 at 9 (citing Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes)), and otherwise got "as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible," *id.* (citing *Fitzgerald*, 2020 WL 7764949, at *12 (quotation and citation omitted)).

Therefore, in addition to the reasons set forth in the Preliminary Approval Motion and the Preliminary Approval Order, the circumstances and outcome of the Notice period further support

---

[6] The reasonableness of the attorneys' fees and costs sought by Class Counsel is further demonstrated in Plaintiffs' Fee Petition, filed contemporaneously with this motion. (*See* Doc. 312).

a finding that the settlement is a fair, reasonable, and adequate resolution of this hybrid class and collective action, and this Court should grant final approval.

### c. The Service Awards to the Class Representatives Should be Approved.

As set forth in the Preliminary Approval Motion, the Sixth Circuit has recognized that those who protest unlawful employment practices and seek to secure rights for other victimized employees should be rewarded for their efforts. *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protest and help to bring rights to a group of employees who have been the victims of [unlawful employment practices]"); *Brandenburg v. Cousin Vinny's Pizza, LLC,* 2019 U.S. Dist. LEXIS 204371, at *21 (S.D. Ohio Nov. 25, 2019) (awards justified by "substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer"). This Court should approve the service payments to the four Class Representatives provided for in the Agreement, in the total amount of $45,000.00, with $15,000.00 to original, sole Named Plaintiff Kerry Ann Loomis, and $10,000.00 to each of the three remaining Class Representatives.

In addition to the reasons previously stated in support of approval of these service awards— such as the fact that they amount to less than one percent of the Gross Settlement Fund and are well within the range of service awards normally approved in the Sixth Circuit, *see, e.g.*, *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *24 (approving a service award of $10,000 for named plaintiff from a $1,140,000 settlement fund)[7]—the facts that have transpired since the

---

[7] *See also, e.g.*, *Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *17 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award to named plaintiff from $850,000 settlement fund because "Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award. Plaintiff's efforts furthered the important public policies underlying the Fair Labor Standards Act."); *Salinas v. U.S. Xpress Enters., Inc.*, 2018 U.S. Dist. LEXIS 50800, at *26 (E.D. Tenn. Mar. 8, 2018) (approving a service award of $10,000 for named plaintiff from a $2,200,000 settlement fund); *Owner-Operator Indep.*

Notices were issued further support the contention that the service awards are fair and appropriate in this case.

Specifically, the service awards were clearly laid out in the Notices sent to all Settlement Class Members (Doc. 309-1 at 38-39, 45-46), and not a single person filed an objection to these awards (or to any other aspect of this settlement). Rokhman Decl. at ¶ 17. In light of the fact that 947 Settlement Class Members were afforded ample opportunity to object to these awards but made no such objection, as well as the significant time and effort the Class Representatives expended to bring these claims on behalf of the Class, at potential risk to themselves, the service awards should be approved in the amounts set forth in the Agreement. *See* Elkin Decl. at ¶¶ 11-12.

## VII.   APPROVAL OF PLAINTIFFS' FLSA SETTLEMENT SHOULD BE CONFIRMED.

The Court correctly concluded in its Preliminary Approval Order that the standard for approval of a settlement agreement under the FLSA "point[s] in favor of approving the proposed settlement agreement." (Doc. 310 at 14–15). Now, in addition to the factors already weighing universally in favor of approval, the "reaction of absent class members" also supports the Court's conclusion that this settlement is fair, reasonable, and adequate. Specifically, of the 947 Settlement Class Members afforded the opportunity to object to the settlement, zero submitted an objection. Likewise, only 2 of those 947 Settlement Class Members submitted challenges to the calculation

*Drivers Ass'n v. Arctic Express, Inc.*, 2016 U.S. Dist. LEXIS 128819, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000 from a $3,000,000 settlement); *Davidson v. Henkel Corp.*, 2015 U.S. Dist. LEXIS 195088,, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid); *Johnson v. Midwest Logistics Sys.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) ("[A]lthough there is a substantial incentive award of $12,500 to the named plaintiff in this case, relief to unnamed class members is not perfunctory" where class members will receive either $260 or $1,000 each and "[t]he Court therefore finds that the incentive award does not undermine the fairness of the settlement.").

of their distribution amounts, consistent with the uniformly positive reaction to the relief afforded under the Agreement. This Court should therefore confirm its prior approval of the FLSA settlement, which was "reached as a result of contested litigation to resolve bona fide disputes." *UAW*, 497 F.3d at 631 (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 & n.8 (11th Cir. 1982)).

## VIII.   THE SETTLEMENT ADMINISTRATOR'S FEES SHOULD BE APPROVED.

As set forth above, Rust is a third-party settlement administrator retained by Class Counsel and appointed by the Court to administer the settlement, including issuance of the Notices, processing JDAFs, issuance of payment to the Settlement Class Members, and maintenance of the Qualified Settlement Fund. Rust is therefore entitled to payment for its services under the Agreement in an amount not to exceed $15,523.00 (*see* Doc. 309-1). Significantly, the Notices informed the Settlement Class Members that the Agreement provides for the payment of this expense out of the Gross Settlement Fund, (*id.* at 45–46), and no Settlement Class Member objected. Rokhman Decl. at ¶ 17.

## IX.   CONCLUSION

For the reasons set forth above, as well as in the Preliminary Approval Motion (Doc. 309), the Court's Preliminary Approval Order (Doc. 310), and to be adduced at the Fairness Hearing on April 17, 2025, the Parties jointly request that this Court enter the Order attached hereto as **Exhibit 3** and:

(1)    stating that there is a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, overtime compensation, or statutory damages;

(2)    granting final approval as to the Agreement, including all information contained in the Notices, as fair, reasonable, adequate, and binding on Plaintiffs and all Settlement Class Members who are participating in the settlement;

16

(3)	approving the procedure for Defendant to pay the Gross Settlement Fund into the QSF as described in Paragraph 10.5 of the Agreement;

(4)	ordering administration of the QSF as described in Paragraphs 10–13 of the Agreement;

(5)	approving the release of claims set forth in the Agreement;

(6)	ordering the dismissal with prejudice of the claims of Plaintiffs and all Settlement Class Members who are participating in the settlement;

(7)	ordering entry of a Stipulation of Dismissal in accordance with the Agreement;

(8)	approving the attorneys' fees and litigation expenses set forth in Paragraphs 10.4, 11.2, and 11.4 of the Agreement and further detailed in Plaintiffs' Fee Petition (Doc. 312);

(9)	retaining jurisdiction over the interpretation and implementation of the Agreement, as well as all matters arising out of or relating to the interpretation or implementation of the Agreement, including but not limited to enjoining any pursuit of claims covered by the release approved by the Court.

Date: April 10, 2025

Respectfully submitted,

By: /s/ Molly A. Elkin
Molly A. Elkin (*pro hac vice*)
John W. Stewart (*pro hac vice*)
McGILLIVARY STEELE & ELKIN LLP
1101 Vermont Avenue NW, Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
mae@mselaborlaw.com
jws@mselaborlaw.com

Melody Fowler-Green (*pro hac vice*)
N. Chase Teeples (*pro hac vice*)
YEZBAK LAW OFFICES PLLC
2901 Dobbs Avenue
Nashville, TN 37211
Telephone: (615) 250-2000
Facsimile: (615) 250-2020
mel@yezbaklaw.com
teeples@yezbaklaw.com

*Plaintiffs' and Class Counsel*

By: /s/ Patrick W. Shea, with email authority
Patrick W. Shea (*pro hac vice*)
Kaveh Dabashi (Pro Hac Vice)
PAUL HASTINGS LLP
patrickshea@paulhastings.com
kavehdabashi@paulhastings.com
200 Park Avenue
New York, New York 10166
Phone: (212) 318-6000
Fax: (212) 319-4090

Charles B. Lee
MILLER & MARTIN PLLC
chuck.lee@millermartin.com
Volunteer Building Suite 1200
832 Georgia Avenue
Chattanooga, Tennessee 37402-2289
Phone: (423) 756-6600
Fax: (423) 785-8480

*Attorneys for Defendant Unum Group Corporation*

## CERTIFICATE OF SERVICE

I certify that this document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by United States Mail, facsimile, or hand delivery. Parties may access this filing through the Court's electronic filing system.

This 10th day of April 2025.

By:/s/ Molly A. Elkin
Molly A. Elkin
McGILLIVARY STEELE & ELKIN LLP
1101 Vermont Avenue NW, Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
mae@mselaborlaw.com